IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL NO. 2:16-cv-12146 |
| STATE OF MICHIGAN AND MICHIGAN DEPARTMENT OF CORRECTIONS, | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff United States of America ("United States") alleges:

## NATURE OF THE ACTION

1.  This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f), § 2000e-6, and 28 U.S.C. §§ 1331, 1343(a) and 1345.

1

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3), § 2000e-6(b), and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action occurred.

## PARTIES

4. Defendants Michigan Department of Corrections ("MDOC") and the State of Michigan are public employers.

5. Defendant MDOC is a governmental agency created pursuant to the laws of the State of Michigan, and Defendant State of Michigan is a state government within the meaning of 42 U.S.C. § 2000e(a).

6. Defendants are "persons" within the meaning of 42 U.S.C. § 2000e(a) and are "employers" within the meaning of 42 U.S.C. § 2000e(b).

7. Defendant MDOC administers and operates Defendant State of Michigan's correctional system and prison facilities, which encompass over 30 correctional facilities, house over 43,000 inmates, and employ over 7,300 Correctional Officers ("COs"). Of those COs, approximately 6,077 (83%) of MDOC COs system-wide are male and 1,292 (17%) are female.

8. Defendants employ COs who are responsible for, among other things, maintaining custodial care and control of inmates housed in correctional facilities in the State of Michigan.

9. MDOC currently administers and operates one correctional facility for adult female inmates, Women's Huron Valley Correctional Facility ("WHV"). WHV is located in the City of Ypsilanti, Washtenaw County, Michigan and within the jurisdiction of this Court. WHV houses over 2,200 female inmates and employs over 330 COs. Of those COs, approximately 85% are female.

10. The Equal Employment Opportunity Commission ("EEOC") received timely charges of discrimination from 28 women employed as COs at WHV alleging MDOC discriminated against them based on sex because MDOC: (1) maintained an overly broad female-only assignment policy without sufficient justification for a bona fide occupational qualification ("BFOQ") exception for such assignments; and (2) denied transfers to female COs in order to staff its female-only assignments. Since the time of their charges, some of the Charging Parties have stopped working at WHV or have left employment with Defendants altogether. The 28 Charging Parties are set forth below:

| NAME | EEOC CHARGE NO. | DATE CHARGE FILED |
|---|---|---|
| Margaret Sharpe | 471-2010-03165 | August 5, 2010 |
| Rita Wise | 471-2010-03331 | September 10, 2010 |
| Lorrie Stanton | 471-2011-01130 | February 11, 2011 |
| Megan Littrup-Dean | 471-2011-01129 | February 24, 2011 |
| Kathleen Mathis | 471-2011-01133 | March 9, 2011 |

| | | |
|---|---|---|
| Jeannine Street-Ostrewich | 471-2011-01134 | March 10, 2011 |
| Amy Morton | 471-2011-01367 | March 15, 2011 |
| Roxanne Weatherly | 471-2011-01311 | March 18, 2011 |
| Dana Starks | 471-2011-01321 | March 18, 2011 |
| Kenesha Thomas | 471-2011-01317 | March 18, 2011 |
| Latonya Dalton | 471-2011-01312 | March 19, 2011 |
| Crystal Socier | 471-2011-01322 | March 23, 2011 |
| Brandi Odom | 471-2011-01379 | March 28, 2011 |
| Vernithia Parker | 471-2011-01382 | March 29, 2011 |
| Michelle Mattox | 471-2011-01380 | April 4, 2011 |
| Joyce Paige | 471-2011-01219 | April 11, 2011 |
| Terri Williams | 471-2011-01364 | April 19, 2011 |
| Patricia Rhodes-Reeves | 471-2011-01328 | April 21, 2011 |
| Aleika Buckner | 471-2011-01793 | April 21, 2011 |
| Jennifer Nielsen | 471-2011-01839 | April 25, 2011 |
| Tia Shidler | 471-2011-01366 | April 25, 2011 |
| Kellee Hill | 471-2011-01787 | April 27, 2011 |
| Sharon Ernest | 471-2011-01785 | May 2, 2011 |
| Sierra Long | 471-2011-02089 | May 6, 2011 |

| Monique Joyce | 471-2011-02084 | May 16, 2011 |
| Shiryl Gentry (now deceased) | 471-2011-01790 | May 17, 2011 |
| Jennifer Edwards | 471-2011-02093 | May 17, 2011 |
| Orlinda Mallett-Godwin | 471-2011-01832 | May 20, 2011 |

11. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charges, found reasonable cause to believe that Title VII violations had occurred with respect to these 28 female COs and similarly situated individuals, and unsuccessfully attempted to conciliate the charges. The EEOC then referred these charges to the United States Department of Justice.

12. On February 11, 2016, the United States notified Defendants of its intent to file a complaint against them for violating Title VII with respect to the allegations raised in the referred EEOC charges, including allegations of a pattern or practice of discrimination.

13. All conditions precedent to the filing of this Complaint have been performed or have occurred.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Prior Litigation Regarding MDOC's Treatment of Female Inmates

14. Before 2008, MDOC primarily housed its adult female inmates in three female-only correctional facilities.

15. During the 1990s, female inmates filed lawsuits in both state and federal court against MDOC alleging numerous constitutional and federal statutory violations emanating from acts of sexual abuse that included sexual misconduct, sexual harassment, and violations of privacy. The female inmates' claims for monetary and injunctive relief were resolved by settlement agreements reached in each case.

16. The United States brought a lawsuit against Defendants in 1997, under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997, *et seq.*, alleging that Defendants were violating the constitutional rights of female inmates by failing to protect them from sexual misconduct and unlawful invasions of privacy. The parties entered into a settlement agreement resolving these claims.

17. As a result of these lawsuits, their resulting settlement agreements, and expert reports and recommendations, MDOC explored approaches for increasing the presence of female COs in certain components of its female

correctional facilities as a means of addressing sexual abuse against female inmates.

18. The United States is not challenging any corrective actions MDOC took pursuant to these settlement agreements.

### MDOC's 2000 Female-Only Assignments

19. In August 2000, MDOC sought approval from the Michigan Civil Service Commission ("MCSC") to designate 267 assignments, the vast majority of which were in the housing units, as female-only assignments such that only female employees could serve in these assignments. With its application, MDOC submitted supporting documentation, including internal data and studies, and expert reports.

20. In August 2000, MCSC granted MDOC's request to certify the 267 assignments as female only.

21. The United States is not challenging the female-only assignments certified in 2000.

### MDOC's 2009 Female-Only Assignments

22. In 2008, MDOC consolidated its three adult female correctional facilities into one, WHV.

23. On or about March 27, 2009, MDOC applied to the MCSC for 11 additional female-only assignments including, but not limited to: (1) Food

Service Officer; (2) Yard Control Officer; (3) Property Room Officer; and (4) Electronic Monitor Officer.  These assignments are not located within WHV's housing units, and are not within the scope of the earlier settlement agreements or the 2000 female-only assignments.

24. In its application, MDOC claimed that given its history of litigation regarding sexual abuse and its desire to maximize safety and security, it demonstrated a need to expand the number of female-only assignments at WHV.  Further, MDOC contended that each assignment "is either an isolated position, involves potential privacy concerns on the part of the prisoners, or requires an officer to conduct pat-down searches on female prisoners."

25. With its application, MDOC included job descriptions for each of the assignments.  Aside from the job descriptions, MDOC did not submit any additional supporting documentation.

26. In April 2009, MCSC granted MDOC's request to certify sex as a BFOQ for the 11 additional assignments at WHV.

27. Shortly thereafter, MDOC designated the 11 job assignments as female only, including, but not limited to, Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer.

28. The Food Service Officer monitors inmate workers and outside contractor workers who receive, store, prepare, and serve food to inmates.  The

8

assignment is generally staffed by two COs, and is located in a public area of WHV where other COs are also present. The assignment was designated as female only in 2009.

29.     The Yard Control Officer monitors the yard areas and makes rounds of the buildings that comprise WHV. There are approximately ten Yard Control Officers on first and second shifts and approximately five officers on third shift. Approximately half of the assignments on each shift were designated female only in 2009. The remainder of the assignments could be staffed by either male or female COs.

30.     The Property Room Officer monitors inmate workers, ensures the safety of incoming inmate purchases, maintains files of inmate purchases, and prevents the introduction of contraband. The assignment is generally staffed by two COs. The assignment was designated as female only in 2009.

31.     The Electronic Monitor Officer monitors WHV through cameras and microphones in the Control Center. There are other COs and supervisory staff in the Control Center. The Electronic Monitor Officer typically does not leave the Control Center, and generally does not interact with inmates. The assignment has been designated as female only since 2009.

32.     Based on representations from MDOC, beginning in or around June 2016, MDOC lifted the female-only restriction from some, but not all, of the

9

2009 female-only assignments, including Food Service Officer, Yard Control Officer, and Property Room Officer.

33. Prior to 2009, male COs worked in the Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer assignments and successfully performed the primary functions of the job for these assignments.

34. MDOC's implementation of the 2009 female-only assignments for Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer has required and continues to require female COs at WHV to work excessive, mandatory overtime hours in order to staff MDOC's female-only assignments and has impeded and continues to impede female COs from transferring from WHV to other MDOC facilities.

35. Charging Parties and similarly situated employees at WHV have suffered emotional distress and economic harm as a result of the unjustified 2009 female-only assignments.

**MDOC's Transfer Policy**

36. Section 8(b) of MDOC's employee handbook and Article 15 of MDOC's collective bargaining agreement ("CBA") with the Service Employees International Union Local 526 M, AFL-CIO, govern transfers, including seniority-based transfers, of COs between MDOC facilities.

10

37. Under Article 15 of the CBA, all non-probationary employees have an opportunity to apply for seniority-based transfers. Eligible employees may sign up to be on the transfer list. Management is required to select the most senior qualified employee whose name has been on the list for at least 30 calendar days.

38. In August 2005, MDOC instituted a freeze on all CO transfers out of its female correctional facilities. In February 2008, MDOC reiterated that the freeze was still in effect.

39. In April 2016, MDOC sought five female COs at WHV to transfer to its Detroit Reentry Center to fill five female-only assignments at that facility. This limited transfer opportunity did not otherwise affect or alter the ongoing transfer freeze.

40. Since the 2009 female-only assignment policy was implemented, MDOC officials have routinely granted the requests of eligible male COs to transfer from WHV to other MDOC facilities pursuant to Article 15 of the CBA despite the transfer freeze.

41. Since the 2009 female-only assignment policy was implemented, MDOC officials have routinely denied the requests of eligible Charging Parties and similarly situated eligible female COs to transfer from WHV to other MDOC facilities.

42. Since the 2009 female-only assignment policy was implemented, MDOC officials have routinely required female COs to find a female CO replacement as a condition of transfer from WHV to another MDOC facility while not requiring this condition of male COs who receive transfers.

43. As a result of MDOC's transfer denials, Charging Parties and similarly situated employees have been denied the opportunity to: (1) move from WHV to MDOC facilities closer to their homes; (2) gain additional experience at other MDOC facilities, which is beneficial for promotion; (3) experience other job opportunities not available at WHV; and (4) move from WHV to a more desirable facility.

44. As a result of MDOC's transfer denials, Charging Parties and similarly situated employees at WHV have been required and continue to be required to work excessive amounts of overtime that are hazardous to their health.

45. Charging Parties and similarly situated employees have suffered emotional distress and economic harm as a result of the discriminatory denial of transfers.

# CLAIMS FOR RELIEF

## COUNT I

**MDOC's 2009 Female-Only Assignments for Food Service Officer, Yard Officer, Property Room Officer, and Electronic Monitor Officer Constitute a Facially Discriminatory Policy which Discriminates on the Basis of Sex Under Sections 703, 706, and 707 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5(f) & 2000e-6**

46. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

47. MDOC's 2009 female-only assignments for Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer have constituted and/or continue to constitute a facially discriminatory policy which discriminates on the basis of sex.

48. Defendants cannot establish that:

   a. designating the Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer assignments as female only was reasonably necessary to the normal operation of its business;

   b. designating these four assignments as female only related to the essence or central mission of its business; and

   c. no reasonable alternatives existed to designating these four assignments as female only.

49.     The 2009 female-only assignments of Defendants described in paragraphs 47 and 48 also constitute a pattern or practice of discrimination on the basis of sex in violation of Title VII.  Defendants have pursued, and continue to pursue, policies and practices that discriminate on the basis of sex. Under both Sections 706 and 707 of Title VII, 42 U.S.C. §§ 2000e-5(f) & 2000e-6(a), the United States has authority to bring a civil action requesting relief.

## COUNT II

**MDOC's 2009 Female-Only Assignments for Food Service Officer, Yard Officer, Property Room Officer, and Electronic Monitor Officer Discriminate Based on Sex and Constitute a Pattern or Practice of Discrimination Based on Sex Under Sections 703, 706, and 707 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5(f) & 2000e-6**

50.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

51.     In violation of Title VII, 42 U.S.C. § 2000e-2(a), MDOC discriminated against Charging Parties and similarly situated female COs, on the basis of sex, with respect to their terms, conditions, or privileges of employment at WHV by unlawfully designating the Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer assignments as female only.

52.     Defendants cannot establish that:

14

  a. designating the Food Service Officer, Yard Control Officer, Property Room Officer, and Electronic Monitor Officer assignments as female only was reasonably necessary to the normal operation of its business;

  b. designating these four assignments as female only related to the essence or central mission of its business; and

  c. no reasonable alternatives existed to designating these four assignments as female only.

53. The 2009 female-only assignments of Defendants described in paragraphs 51 through 52 also constitute a pattern or practice of discrimination on the basis of sex in violation of Title VII.  Defendants have pursued, and continue to pursue, policies and practices with respect to terms, conditions, or privileges of employment that discriminate against women and that deprive or tend to deprive women of employment opportunities because of their sex.  Under both Sections 706 and 707 of Title VII, 42 U.S.C. §§ 2000e-5(f) & 2000e-6(a), the United States has authority to bring a civil action requesting relief.

## COUNT III

**MDOC's Transfer Practice Discriminates Based on Sex and Constitutes a Pattern or Practice of Discrimination Based on Sex Under Sections 703, 706 and 707 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5(f) & 2000e-6**

54. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 above.

55. In violation of Title VII, 42 U.S.C. § 2000e-2(a), MDOC has discriminated on the basis of sex at WHV in terms of transfers among other ways, by:

   a. denying transfers or imposing additional conditions for transfers of eligible Charging Parties and similarly situated female COs at WHV; and

   b. granting transfers of male COs with less seniority than eligible Charging Parties and similarly situated female COs at WHV and/or not imposing additional conditions on male COs' transfer requests.

56. The acts and practices of Defendants described in paragraph 55 also constitute a pattern or practice of discrimination on the basis of sex in violation of Title VII. Defendants have pursued, and continue to pursue, policies and practices with respect to terms, conditions, or privileges of employment that discriminate against women and that deprive or tend to deprive women of employment opportunities because of their sex. Under both Sections 706 and

16

707 of Title VII, 42 U.S.C. §§ 2000e-5(f) & 2000e-6(a), the United States has authority to bring a civil action requesting relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States prays that this Court grant the following relief:

A.  Enjoin Defendants from further discrimination in job assignments on the basis of sex at WHV;

B.  Enjoin Defendants from further discrimination in the grant of transfer requests against Charging Parties and similarly situated female COs at WHV;

C.  Order Defendants to develop and implement appropriate and effective measures to prevent discrimination, including, but not limited to, policies, procedures, and training for employees and officials;

D.  Require Defendants to adopt Title VII-compliant job assignment and transfer policies;

E.  Award damages to Charging Parties and similarly situated female COs to compensate them for the pain and suffering and economic harm caused by the discriminatory conduct, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

F.  Award such additional relief as justice may require, together with the United States' costs and disbursements in this action.

## **JURY DEMAND**

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Dated: June 13, 2016

Respectfully submitted,

| | |
|---|---|
| BARBARA L. McQUADE<br>United States Attorney<br>Eastern District of Michigan | VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division |
| BY: /s/ *Sarah Karpinen*<br>SARAH KARPINEN, P63289<br>Assistant United States Attorney<br>211 W. Fort Street<br>Suite 2001<br>Detroit, Michigan 48226<br>(313) 226-9595<br>Sarah.Karpinen@usdoj.gov | BY: DELORA L. KENNEBREW<br>Chief<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br><br>/s/ *Clare Geller*<br>CLARE GELLER (NY Reg. No. 4087037)<br>Deputy Chief<br><br>/s/ *Carol A. Wong*<br>CAROL A. WONG (IL Bar. No. 6294123)<br>LISA WILSON EDWARDS (DC Bar No. 421480)<br>TARYN WILGUS NULL (DC Bar No. 985724)<br>Trial Attorneys<br>Employment Litigation Section<br>Civil Rights Division<br>United States Department of Justice<br>601 D Street, NW<br>Patrick Henry Building<br>Washington, DC 20579<br>Telephone: (202) 514-3831<br>Facsimile: (202) 514-1105<br>Email: Carol.Wong@usdoj.gov |