*United States of America v. State of MI and MDOC*
**USDC-ED No: 2:16-cv-12146**
**Honorable Paul D. Borman**
**Magistrate Judge Mona K. Majzoub**

# EXHIBIT 1
Settlement Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Civil Action No. 97-CVB-71514-BDT

v.

                                    Hon. John Corbett O'Meara

STATE OF MICHIGAN, et al,

        Defendants.

_____/

SETTLEMENT AGREEMENT

## I.   INTRODUCTION

On March 10, 1997, the United States initiated this litigation alleging that Defendants were

violating the constitutional rights of inmates incarcerated in Michigan women's prisons to be free

from sexual misconduct and unlawful invasions of privacy, and to receive appropriate medical and

mental health care for serious medical and mental health needs.

After conducting considerable discovery, the United States has dismissed its medical and

mental health care claims against Defendants. In order to resolve the remaining issues in this

litigation, the parties have entered into this settlement agreement, which, if substantially complied

with by Defendants within the time frames specified in Section XV below, will result in the dismissal

of the United States' remaining claims.

The parties agree that this settlement does not constitute an admission by the State of

Michigan or the individual Defendants of the truth of the allegations contained in the Complaint, and

does not constitute an admission of liability by Defendants in this action. Defendants agree that

policies and procedures adopted or changed pursuant to this Settlement Agreement will continue to be implemented after the Complaint has been dismissed; provided, however, that this Settlement Agreement is not intended to, nor does it, prevent Defendants from changing its policies for purposes of confronting issues that could arise in the future.

This Settlement Agreement is the product of negotiations conducted only between the State of Michigan and the United States of America, and DOJ does not purport to speak for any private plaintiffs.

The parties understand and agree that to the extent that this Agreement requires changes in MDOC policy affecting bargaining unit employees, such changes are subject to negotiations with the labor union(s) representing the affected employees, and are subject to approval by the Michigan Office of State Employer and the Michigan Civil Service Commission, and subject to state law. The parties also understand and agree that disciplinary action against employees of the MDOC is subject to the terms of collective bargaining agreements and state civil service rules. MDOC will make a good faith attempt to seek modifications or additions to existing or future collective bargaining agreements to effectuate the provisions of this Settlement Agreement.

## II.    DEFINITIONS

For purposes of this agreement only, the following definitions shall apply:

A.    "MDOC" means the Michigan Department of Corrections.

B.    "Inmate" means any female inmate incarcerated in Scott or Crane.

C.    "Scott" means the Scott Correctional Facility.

D.    "Crane" means the Crane Correctional Facility.

E.    "Staff" means correctional officers, maintenance workers, kitchen workers, teachers

-2-

employed full time by MDOC, counselors, and any other person having significant contact with inmates, whether employed by MDOC or under contract with MDOC, who are assigned to work at Crane or Scott. "Staff" does not include medical specialists, contractual dentists and optometrists, or college instructors who are employed by an entity other than MDOC.

F.  "Management" means the Director of the MDOC, Deputy Director of Correctional Facility Administration, Warden and Deputy Warden of Crane and Scott.

G.  "Sexual Misconduct" means staff engaging in, or attempting to engage in, a sexual act with any inmate, or the intentional touching of an inmate's genitals, anus, groin, breast, inner thigh or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. Sexual misconduct also includes indecent exposure to an inmate(s).

H.  "Sexual Harassment" means sexual advances, requests for sexual favors, and other offensive verbal or physical conduct of a sexual nature. Sexual harassment also includes verbal conduct of a gender-related nature intended to humiliate, harass, degrade or arouse.

I.  "Overfamiliarity" means conduct between a staff member and an inmate which has or is likely to result in intimacy or a close personal association, or conduct that is contrary to the good order of the institutions.

J.  "DOJ" means the United States Department of Justice.

K.  "Consult" means only provision of written and/or verbal comments to counsel.

III.  **MDOC POLICIES AND PROCEDURES**

A.  Policies And Procedures.  MDOC will revise its current policies and procedures relating to sexual misconduct, sexual harassment, overfamiliarity, and other concepts encompassed by this Settlement Agreement and, where necessary, will utilize concepts and materials obtained from

-3-

other sources generally accepted in the corrections community as knowledgeable in the area to ensure that its policies and procedures are simple, direct, and explicitly define and prohibit sexual misconduct, sexual harassment, overfamiliarity, and other conduct prohibited by policies established pursuant to this Agreement.

B.     Policies And Procedures Regarding This Settlement Agreement.    MDOC will revise as necessary its policies and procedures to ensure that all of the provisions of this Settlement Agreement are incorporated into MDOC policies and procedures.  Prior to final adoption of any revised policy and procedure, MDOC will provide DOJ with a reasonable opportunity to review the proposed policy and procedure and to consult with MDOC regarding the proposed policy and procedure.

**IV.    PRE-EMPLOYMENT SCREENING**

A.     Current Staff With Inmate Contact.    MDOC will conduct a Law Enforcement Information Network ("LEIN") check to include criminal history approximately every 5 years after the initiation of employment for all staff.  As a result of those LEIN inquires, MDOC will take appropriate action consistent with MDOC policies relating to failure to report criminal convictions. Within six months of the execution of this Agreement, MDOC will, to the extent not already accomplished, conduct a LEIN check to include criminal history of all staff who have been employed by MDOC for over five years.

B.     Future Correctional Staff with Female Inmate Contact.    In accordance with P.D. 02.06.110, 111 and applicable Civil Service Rules, MDOC will continue to utilize reasonable measures to determine applicants' fitness to work in a female facility prior to hiring correctional staff for a womens' facility. These measures will include, but will not be limited to:  drug abuse screening;

-4-

fingerprints to be sent to the Michigan State Police; investigation of information in employment application (past employment for previous 5 years, past education, references); LEIN check to include criminal history and filed personal protective orders for domestic violence; National Crime Information Center record check; military discharge status; investigation of whether applicants have ever worked in MDOC prisons, and if so, whether they were the subject of investigations or allegations of sexual misconduct, sexual harassment, overfamiliarity or conduct prohibited by policies established pursuant to this Agreement.

C. <u>Future Non-Correctional Persons With Female Inmate Contact.</u> MDOC will utilize the same pre-employment screening measures for non-correctional staff, who will have significant contact with female inmates as it does for correctional staff. For non-correctional staff employed by an entity other than MDOC, and for volunteers, MDOC will make a LEIN inquiry to include criminal history and filed personal protection orders for domestic violence.

## V. STAFF TRAINING

A. <u>Training Materials.</u> DOJ recognizes that MDOC provides specialized training for all staff who work in a female correctional facility through the 40 hour seminar entitled Issues in Managing the Female Offender. MDOC will continue to require that all staff who work with inmates complete this training program.

MDOC will, where necessary, revise its current training materials utilizing concepts and materials obtained from other sources generally accepted in the corrections community as knowledgeable in the area to ensure that it will continue to have a current, complete set of training materials relating to sexual misconduct, sexual harassment, overfamiliarity and other subject matter covered by this Agreement. During the pendency of this action, MDOC will, prior to final adoption

-5-

of any new training materials, provide DOJ with a reasonable opportunity to review the proposed training materials and to consult with MDOC regarding the proposed materials.

Upon implementation, MDOC will require existing staff to acknowledge in writing that they have been apprised of MDOC policies concerning conduct prohibited by polices established pursuant to this Agreement. MDOC will revise its current training materials to incorporate all of the provisions of this Agreement for which training is to be conducted.

B.    Training Topics.    MDOC will, for sexual misconduct, sexual harassment, overfamiliarity, and other conduct prohibited by policies established pursuant to this Agreement, include in its preservice and inservice staff training at least the following concepts: (1) identification of what constitutes the above referenced conduct; (2) explanation of how inmates are harmed by such conduct; (3) description of how the security of the facility is jeopardized by such conduct; (4) a statement of the legal and employment consequences of participating in or failing to report such conduct; (5) a description of how to report such conduct, including when, how, and to whom it should be reported, with emphasis on staff's obligation to monitor, observe, and report the behavior of other staff regarding such conduct and disciplinary consequences for failure to report; (6) instruction on supervising, observing, and interacting with opposite gender inmates; (7) instruction on the proper method of conducting pat down searches of inmates; (8) instruction on the enforcement of MDOC's revised inmate dress code; and (9) instruction on the prohibition of retaliation by staff members and how to report retaliation.

C.    Training Topics Regarding Sexual Misconduct and Harassment.    MDOC will, within sixty (60) days of the execution of this Agreement, implement a training module, modeled after the Federal Bureau of Prisons' two hour training module, addressing sexual misconduct and

-6-

harassment for both new employees and in-service staff training.

      D.     <u>Routine In-service Training.</u>  Subsequent to initial in-service training, the Director of MDOC, after consultation with the Special Administrator (See Section VII (A) (1) (c) below) will determine the number of hours of mandatory in-service training covering the topics described in Section V(B) to be required of all institutional management, corrections officers, and non-correctional staff with inmate contact.

## VI.    INMATE EDUCATION

      A.     <u>Inmate Information.</u>  As part of new inmates' orientation process and reorientation for existing inmates regarding subjects of this Agreement, MDOC will provide inmates with both written and verbal presentations concerning the MDOC's prohibitions against sexual misconduct, sexual harassment, overfamiliarity, and other conduct prohibited by policies established pursuant to this Agreement and the reporting thereof, as set forth in MDOC's policies and described in MDOC's Sexual Assault/Abuse Prevention and Intervention brochure and Inmate Handbook. This information will include: (1) identification of what constitutes sexual misconduct, sexual harassment, overfamiliarity, or other conduct prohibited by policies established pursuant to this Agreement; (2) a statement that MDOC prohibits such conduct by staff and by inmates; (3) a statement of the consequences of participating in such conduct, including when, how, and to whom it should be reported; (4) a statement on the consequences of reporting such conduct as a victim and as a witness, including assurances of confidentiality and non-retaliation; (5) information on the rules regarding interacting with opposite gender staff; (6) instruction on the MDOC approved method of conducting pat down searches; (7) explanation of staff members' duty to report misconduct; and (8) instruction on the terms of MDOC's inmate dress code.

-7-

MDOC will take necessary measures to ensure that non-English speaking inmates receive the above information.

B.    High Visibility Reminders.    MDOC will post in all Scott and Crane living areas posters or similar signs that remind readers of MDOC's prohibition against sexual misconduct.

C.    Copies of this Agreement will be maintained in Scott and Crane law libraries.

## VII. FACILITATION OF INMATE AND STAFF REPORTING OF ALLEGATIONS OF SEXUAL MISCONDUCT, SEXUAL HARASSMENT OR OVERFAMILIARITY

A.    Inmate Reporting.    MDOC will facilitate the reporting of sexual misconduct, sexual harassment, overfamiliarity, and other conduct prohibited by policies established pursuant to this Agreement by the means and methods set forth in MDOC policy and described in MDOC's Sexual Assault/Abuse Prevention and Intervention brochure and Inmate Handbook, including verbal reporting by inmates, grievances, kites, and letters. To assure inmates that they will not be placed in protective custody as a result of reporting conduct pursuant to this paragraph, MDOC will continue its current policy regarding protective custody.

1.    Minimization of Deterrents to Reporting.

a.    Confidentiality.    MDOC will take all reasonable steps to ensure that staff and inmates preserve the confidentiality of inmates who report sexual misconduct, sexual harassment, overfamiliarity, and other conduct prohibited by this Agreement, including, but not limited to, warnings not to discuss investigations and providing for disciplinary action against a staff member, or an inmate, who intentionally compromises the confidentiality of an investigation.

b.    Prohibition of Retaliation.    Retaliation will continue to be prohibited by the MDOC pursuant to P.D.02.03.108, and the MDOC will continue to take disciplinary action

-8-

regarding substantiated instances of retaliation as appropriate.

                  c.      Special Administrator. MDOC will appoint a Special Administrator, not based at either Scott or Crane, who will report directly to the MDOC's Director, to whom inmates can write or speak with in confidence about allegations of sexual misconduct, sexual harassment, overfamiliarity, or other conduct prohibited by policies established pursuant to this Agreement. Information about the role and responsibilities of the Special Administrator will be provided to inmates by means of the Sexual Abuse/Assault Prevention and Intervention brochure and the Inmate Handbook. The Special Administrator will have appropriate experience, education and training necessary to address such issues in women's prisons, including, but not limited to, the training identified in Section V(A) above. MDOC will provide to the Special Administrator quarterly reports of complaints and the status of investigations regarding sexual misconduct, sexual harassment, overfamiliarity, other conduct prohibited by policies established pursuant to this Agreement, or retaliation for filing reports of such conduct. The Special Administrator will have the authority to request a criminal or administrative investigation of sexual misconduct, sexual harassment, overfamiliarity, or conduct prohibited by policies established pursuant to this Agreement.

      B.      Staff Reporting, Confidentiality and Prohibition of Retaliation. MDOC P.D.02.03.100 and Work Rules 1, 33 and 38 shall govern staff reporting, confidentiality, and prohibition of retaliation, including but not limited to, the duty to report conduct prohibited by policies established pursuant to this Agreement, prohibiting retaliation in response to the reporting of such violations, and to keep confidential such reports.

## VIII.   INVESTIGATION OF ALLEGATIONS OF SEXUAL MISCONDUCT

      A.      MDOC Investigations.      MDOC will conduct timely, complete, thorough,

USA V DOC 001108

documented, and uniform investigations in accordance with generally accepted corrections investigation principles of all allegations, however received (verbal report, kite, grievance, or letter to management) of sexual misconduct, sexual harassment, overfamiliarity, or conduct prohibited by policies established pursuant to this Agreement. MDOC investigators will continue to be trained in conducting such investigations.

B. Continuation of Investigations. MDOC will continue to refer allegations of sexual misconduct that, if true, constitute criminal acts to the Michigan State Police (MSP) for investigation. If, after an MSP investigation, MSP determines that it lacks sufficient evidence to refer the matter to the county prosecuting attorney for criminal prosecution, MDOC will continue to conduct an administrative investigation into the allegations, using a "preponderance of evidence" standard, and will take appropriate disciplinary action.

C. Questionnaires. MDOC may use written questionnaires or statements to secure information from suspects or witnesses in sexual misconduct investigations in conjunction with other investigative techniques. MDOC will conduct face-to-face interviews of all suspects and victims, and of sufficient witnesses to establish the facts.

D. Continuation Of Investigations. If an employee accused of sexual misconduct resigns or is fired, MDOC will continue to take investigative action in accordance with P.D.01.01.140.

E. Mandatory Staff Participation In Investigations. Subject to the limitations reflected in Section I of this Settlement Agreement, MDOC will discipline, up to and including termination, staff who are accused of and/or witnessed sexual misconduct and who refuse to cooperate with an investigation.

F. Response to Allegations Arising In This Lawsuit. MDOC will, in conjunction with

-10-

the Michigan State Police where necessary, continue ongoing investigation of all remaining allegations of sexual misconduct and of egregious instances of sexual harassment arising in this lawsuit.

      G.    Temporary Reassignment of Employee. MDOC will continue its current practice of removing staff accused of sexual misconduct from contact with female inmates pending the outcome of the investigation.

      H.    Review of Sexual Assault/Sexual Misconduct. MDOC will ensure that all investigations of staff accused of sexual misconduct, sexual harassment, overfamiliarity, or other conduct prohibited by policies established pursuant to this Agreement, will include a search for past allegations, investigations, or discipline against the alleged perpetrator. MDOC will also review prior allegations of such conduct made by the inmates.

## IX.   SEARCH FOR AND APPROACH TO SEXUAL MISCONDUCT

      A.    Minimization of One on One Situations. MDOC will implement a new policy that restricts inmates and male staff from being alone in one-on-one situations together at Scott or Crane in areas not clearly visible to inmates or other staff, with the following exceptions: emergencies, medical care, counseling, questioning during investigations, and reporting of confidential information.

      B.    Minimizations of Access to Secluded Areas. MDOC has and will continue to take reasonable measure to eliminate access to secluded areas that are not necessary to the operation of Scott or Crane.

      C.    Monitoring/Protection For Secluded Areas. MDOC has and will continue to increase the visibility and observability of secluded areas of Scott and Crane to which inmates have access, including, but not limited to, retrofitting as necessary doors with windows, screens, or other devices

USA V DOC 001110

which will facilitate surveillance, installing convex mirrors to provide a line of sight beyond areas not viewable from door windows or other observation points, and rekeying to further restrict access to secluded areas. MDOC will require that supervisors conduct rounds of such areas at periodic intervals sufficient to guard against sexual misconduct, sexual harassment, overfamiliarity or other conduct prohibited by policies established pursuant to this Agreement.

D.      Inmate Clothing. MDOC will implement a standard institutional dress code for inmates.

E.      Random Inmate Interviews and Exit Interviews. The Special Administrator, or individuals designated by the Director, which may include Scott and Crane Wardens and Deputy Wardens, will conduct periodic, confidential, random interviews of inmates regarding, at a minimum, sexual misconduct, sexual harassment, overfamiliarity, and other policies and procedures established to effectuate the terms of this Settlement Agreement, and inmate understanding of the MDOC rules and regulations governing same. In addition, the Special Administrator or designee, the Scott and Crane Wardens and Deputy Wardens will conduct confidential, random exit interviews of inmates. Nothing in this provision shall be interpreted to mean that the Special Administrator or designee cannot, in order to initiate or assist in an investigation of sexual misconduct, share with the MDOC investigators and management information obtained in random inmate and staff interviews. The Special Administrator will share allegations of sexual misconduct, sexual harassment, overfamiliarity and conduct prohibited by policies established pursuant to this Agreement with the warden.

F.      Post–Investigation Management Review. Pursuant to P.D.01.01.140, the Sexual Assault/Sexual Misconduct-Review Committee will continue to conduct regular meetings to discuss both substantiated and unsubstantiated incidents of sexual misconduct and possible methods for

-12-

avoiding such incidents in the future.  Significant information resulting from such reviews will be considered for inclusion into MDOC training materials, policies and procedures.

      G.    <u>Creation of Sexual Misconduct Files.</u>  MDOC will utilize its tracking system to store allegations of, and information concerning, sexual misconduct, sexual harassment, overfamiliarity and conduct prohibited by policies established pursuant to this Agreement, whether substantiated or not. The tracking system will be searchable by, at a minimum, inmate and staff name, and by type of prohibited behavior.  Investigators and management will have access to this tracking system.  The tracking system will be queried prior to accepting rehires.  MDOC will conduct a quarterly search of this tracking system, and any staff shown in this review to have been the subject of more than two allegations of prohibited behavior within the past five years shall be subject to appropriate action, including, but not limited to: a meeting with supervisors, a referral to an employee assistance program, retraining, or reassignment.  The tracking system will also be used to effectuate the provision of Paragraph VIII(H).

      H.    <u>Staffing.</u>  Within ninety days after execution of this Settlement Agreement, MDOC will conduct a staffing study to explore the feasibility of:  1) redeploying officers to increase the presence of female officers in the housing units at Scott and Crane; and 2)  rotating staff assignments to housing units at Scott and Crane.  If feasible, MDOC will develop and implement a plan consistent with this study.

## X.    RESPONSE TO SUBSTANTIATED MISCONDUCT

      A.    <u>Staff Discipline.</u>  Staff who resign in lieu of termination during an investigation for sexual misconduct, sexual harassment, overfamiliarity, other conduct prohibited by policies established pursuant to this Agreement, retaliation, or failure to report a violation of MDOC policy

-13-

or Work Rules in such areas will not be eligible for rehire by the Michigan Department of Corrections. In a situation where an allegation of sexual misconduct, sexual harassment, overfamiliarity or conduct prohibited by policies established pursuant to this Agreement is substantiated, appropriate disciplinary action will be taken pursuant to MDOC policy and work rules.

B.   Inmate Psychological Services.   MDOC will offer psychological services consistent with and identified in P.D 04.06.180 to any inmate subjected to or alleged to have been subject to sexual misconduct with staff. MDOC will offer psychological services consistent with and identified in P.D.04.06.180 to any inmate found by MDOC to have been subjected to, or to any inmate who makes a credible allegation in a kite, grievance, or letter to management, that she was subject to, sexual harassment.

C.   Inmate Discipline.   If an inmate makes allegations of sexual misconduct which are determined to be unfounded, the inmate shall be charged with major misconduct.

## XI.   MONITORING OF INMATE DRESSING SHOWERING AND TOILETING AREAS

Knock And Announce Policies.   Absent exigent circumstances or reasonable suspicion of inappropriate behavior, male corrections officers will be trained that, as an accommodation, they are to announce their presence into areas where inmates normally could be in a state of undress.

## XII.   PAT DOWN SEARCHES

Absent exigent circumstances or a reasonable suspicion that the inmate is in possession of contraband, and subject to legitimate penological concerns, pat down searches of female inmates will only be conducted by female corrections officers during an evaluation period of at least six months. During the evaluation period MDOC will (a) conduct training and make any needed policy revisions

-14-

USA V DOC 001113

to further clarify that pat down searches are not used to sexually harass inmates, and (b) evaluate the feasibility of modifying or eliminating the current requirement of five daily pat down searches per officer. Should the MDOC decide to resume the routine search of inmates by male officers, institutional management will routinely observe line staff conducting pat down searches and give instruction or guidance as needed.

## XIII. SCREENING OF INMATES REGARDING PAST HISTORIES OF PHYSICAL OR SEXUAL ABUSE

MDOC will continue to have trained Reception Center staff conduct adequate screening of all new inmates including inquiries designed to elicit past histories of physical or sexual abuse and, pursuant to P.D.04.06.180, provide, when necessary, mental health services to inmates.

## XIV. QUALITY ASSURANCE PROGRAM

MDOC will monitor the quality of its pre-employment hiring process, its staff training and inmate education programs as described in this Agreement, as well as the quality of investigations described in Section VIII above.

## XV. DOJ MONITORING OF SETTLEMENT AGREEMENT, TIME FRAME FOR SUBSTANTIAL COMPLIANCE, AND TERMINATION OF THE LITIGATION

A. Conditional Dismissal Under Rule 41(a). Upon execution of this Settlement Agreement, the parties will jointly move the Court for entry of an Order conditionally dismissing this action, pursuant to Fed. R. Civ.. P. 41 (a) (2), conditional upon Defendants achieving substantial compliance with its terms, and will attach this Settlement Agreement to such motion. The motion will request that the case be placed on the Court's inactive docket, though the Court shall retain jurisdiction over the case until a final dismissal.

B. Monitoring And Time Frames For Compliance. DOJ and a jointly agreed on expert,

-15-

who must be selected and contracted with before this Settlement Agreement is executed, will have reasonable access to inmates and staff, MDOC documents, information relating to implementation of this Settlement Agreement, and to allegations of sexual misconduct and other prohibited conduct addressed by this Settlement Agreement for the purpose of monitoring Defendants' implementation of the Settlement Agreement. The parties will equally fund the joint expert's activities.

Not more than one DOJ attorney, one attorney for MDOC, the MDOC Director or his designee, and the joint expert will conduct an initial on-site compliance monitoring tour of Scott and Crane approximately three months after execution of this Settlement Agreement. Neither DOJ nor the joint expert shall add provisions or expand the scope of this Settlement Agreement in any manner. Within 30 days of the end of the compliance tour, the joint expert shall inform the parties in writing of his or her opinion of Defendants' compliance with each of the terms of this Settlement Agreement, including identifying any deficiencies in compliance.

Not more than one DOJ attorney, one MDOC attorney, the MDOC Director or his designee, and the joint expert will conduct a final on-site compliance monitoring tour of Scott and Crane approximately six months after execution of this Settlement Agreement. Within 30 days of the end of the final compliance tour, the joint expert shall inform the parties in writing of his or her opinion of Defendants' compliance with each of the terms of this Settlement Agreement, including identifying any deficiencies in compliance. If the joint expert determines that Defendants have substantially complied with the terms of the Settlement Agreement, the parties will file a stipulation to dismiss containing the following language: "The United States agrees that dismissal of this action is appropriate. There is no pattern or practice of Defendants violating female inmates' constitutional right to be free from sexual misconduct and sexually inappropriate behavior. The Michigan

-16-

Department of Corrections remains committed to eliminating sexual misconduct and all other forms of prohibited sexual conduct within the Scott and Crane facilities."

If the joint expert determines that Defendants have not substantially complied with the Settlement Agreement, DOJ may file a motion to restore the case to the Court's active docket for purposes of litigating the allegations in the Complaint, and Defendants agree not to contest such motion. Neither DOJ nor the Defendants shall file a motion or suit for specific performance of the Settlement Agreement. The United States reserves the right to file a motion to restore this case to the Court's active docket for purposes of litigating the allegations in the Complaint at any time if it believes that defendants are not making a good faith effort to substantially comply with the Settlement Agreement. Plaintiff shall give defense counsel 14 calendar days' written notice before the filing of such motion.

C. Substantial Compliance. "Substantial Compliance" with the terms of the Settlement Agreement will fully satisfy the Settlement Agreement. Isolated and unintentional incidents will not constitute noncompliance.

## XVI.  EVIDENCE

In the event this action goes to trial, nothing contained in this Settlement Agreement will be introduced as evidence.

## XVII.  COSTS.

All parties shall bear their own costs and fees.

-17-

Dated _May 25, 1999_

FOR THE PLAINTIFF

_Saul A. Green_

SAUL GREEN
United States Attorney
Eastern District of Michigan

BILL LANN LEE
Acting Assistant
Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

MELLIE H. NELSON
Deputy Chief
Special Litigation Section

SHANETTA Y. BROWN-CUTLAR
Trial Attorney
Special Litigation Section

-18-

TAWANA E. DAVIS
DANA SHOENBERG
MARK MASLING
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 66400
Washington, D.C. 20035-6400
(202) 514-0195

FOR THE DEFENDANT.

BILL MARTIN
Director
Michigan Department of Corrections

MICHAEL A. NICKERSON (P25138)
LEO H. FRIEDMAN (P26319)
MARK W. MATUS (P36659)
Assistant Attorneys General
Corrections Division
P. O. Box 30217
Lansing, MI 48909
(517) 335-7021

-19-

# END
# OF
# DOCUMENT