**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**                             **CIVIL ACTION NO. 16-cv-12146**

    **v.**                                      **DISTRICT JUDGE PAUL D. BORMAN**

**STATE OF MICHIGAN AND**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**MICHIGAN DEPARTMENT OF**
**CORRECTIONS,**

    **Defendants.**
_____/

**OPINION AND ORDER DENYING PROPOSED INTERVENING**
**PLAINTIFFS' MOTION TO INTERVENE [68]**

This matter comes before the Court on a Motion to Intervene filed by Proposed Intervening Plaintiffs Kenesha Thomas, Amy Morton, Crystal Socier, and Monique Joyce. (Docket no. 68.) Plaintiff United States of America and Defendants State of Michigan and Michigan Department of Corrections (MDOC) filed Responses to the Motion, to which Proposed Intervening Plaintiffs replied. (Docket nos. 72, 73, 74.) With leave of court, Plaintiff has filed a sur-reply brief. (Docket nos. 83, 84.) The Motion has been referred to the undersigned for consideration. (Docket no. 70.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.**     **BACKGROUND**

Twenty-eight charging parties, including Proposed Intervening Plaintiffs, filed charges against Defendants with the Equal Employment Opportunity Commission (EEOC) between

August 5, 2010, and May 20, 2011, alleging, *inter alia*, that Defendants (1) discriminated against them on the basis of sex by maintaining an overly-broad female-only assignment policy without sufficient justification for a bona fide occupational qualification (BFOQ) exception for such assignments; and (2) denied transfers to female corrections officers in order to staff the female-only assignments at Women's Huron Valley Correctional Facility (WHV), the State's only female prison. (*See* docket no. 73 at 4-5.) Following unsuccessful conciliation efforts, the EEOC referred the charges to the Department of Justice (DOJ). (*See id.* at 5.) Plaintiff subsequently initiated this employment civil rights action against Defendants on June 13, 2016, asserting claims of sex discrimination in violation of Sections 703, 706, and 707 of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.* (Docket nos. 1, 6.) Over the next couple years, the parties engaged in extensive discovery efforts and settlement negotiations, and on August 17, 2018, they reached an "agreement in principle" to settle the case. (*See* docket no. 73 at 8, 9-10.) On October 9, 2018, the court entered a stipulated order holding all deadlines in abeyance pending the submission of a written settlement agreement to the court for review and entry within ninety days. (Docket no. 66.)

## II.  THE MOTION TO INTERVENE

Proposed Intervening Plaintiffs, who are four of the individuals that filed charges with the EEOC, filed the instant Motion to Intervene on December 3, 2018.[1] (Docket no. 68.) In the Motion, Proposed Intervening Plaintiffs contend that they had believed that their interests were being represented by the DOJ attorneys, that they had recently had little to no contact with the DOJ attorneys, and that they had learned of the settlement negotiations through the media but were not

---

[1] In the reply brief, Proposed Intervening Plaintiffs' counsel indicates that he now represents fifteen of the twenty-eight charging parties and expects to represent more in the future. (Docket no. 74 at 2 n.1.) The eleven additional individuals do not expressly seek to join in the instant Motion.

consulted regarding and are not aware of the terms of the settlement. (*Id*. at 2.) Proposed Intervening Plaintiffs assert that they do not wish to settle their claims without adequate representation of counsel and that they have a right to intervene in this matter to pursue their individual interests. (*Id*. at 2-3.) They further assert that they clearly have a different interest in this matter than that of the EEOC and that while they haven't consulted, consented, or participated in any of the settlement discussions, they will seek different relief than the relief provided by the settlement, for example, a transfer to a different correctional facility or financial redress. (*Id*. at 5.) Additionally, the proposed intervenors contend that they would have brought this Motion sooner if they had understood the legal intricacies of this case. (*Id*.) Instead, they assert that they incorrectly believed that their interests and those of the EEOC were one and the same, but after consulting with an attorney on December 3, 2018, they learned that the government does not represent them individually, and they promptly filed the instant Motion to Intervene the same day. (*Id*.)

Defendants respond that the settlement agreement in principle that was placed on the record on August 17, 2018, contains an individual damage component and provides a structure for any individual to object to the proposed individual relief awards at a Fairness Hearing. (Docket no. 72 at 2-5.) They therefore ask that Proposed Intervening Plaintiffs' Motion to Intervene be held in abeyance until after the interested individuals are notified of their damage awards and have had the opportunity to object to those awards under the procedures agreed to by the parties. (*Id*. at 5.) Alternatively, Defendants assert that if intervention is allowed, it should be only for the limited purpose of advocating for the individuals at the Fairness Hearing. (*Id*.)

Plaintiff responds that Proposed Intervening Plaintiffs erroneously claim to have had little to no contact with the DOJ and to have only recently learned that the DOJ does not represent them

individually. (Docket no. 73 at 12.) As discussed in further detail below, Plaintiff asserts that DOJ representatives have been in regular contact with all of the charging parties prior to and throughout this litigation to update them regarding the status of the case, to inform them that the DOJ does not represent them individually but represents the interests of the United States, to notify them of their right to intervene, and to provide them with contact information for the DOJ should they have any questions. (*Id*. at 5-11.) Plaintiff also points out that the Motion evinces confusion regarding the role of the EEOC in this matter. (*Id*. at 13.) Plaintiff clarifies that the EEOC's jurisdiction ended with its referral of the charges to the DOJ and that the DOJ represents the United States in this case. (*Id*.)

Plaintiff opposes unlimited intervention in this lawsuit by the Proposed Intervening Plaintiffs on the basis that the Motion to Intervene is untimely where the lawsuit is on the precipice of resolution through settlement, the proposed intervenors' purpose for intervening aligns with Plaintiff's purpose in this matter, the proposed intervenors have known that their interests may be affected by this suit since its inception, the parties will be significantly prejudiced if the agreement in principle to settle is disturbed, and relief to the victims of Defendants' discrimination will be further delayed by the intervention. (Docket no. 73 at 2, 4.) Nevertheless, Plaintiff does not oppose limited intervention similar to that suggested by Defendants, for the purpose of providing the proposed intervenors with the right to advocate for maximizing their individual relief awards within the parameters of the settlement agreement in principle. (*Id*.)

## III. GOVERNING LAW

Federal Rule of Civil Procedure 24 governs intervention and "is broadly construed in favor of potential intervenors." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citations omitted). Subsection (a) governs intervention as of right and provides, in relevant part, that "[o]n

4

timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1).[2] Courts evaluate five factors in determining the timeliness of a motion to intervene:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000) (quoting *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990)). "No single factor is determinative; instead, timeliness 'should be evaluated in the context of all relevant circumstances.'" *Equal Employment Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, No. 16-2424, 2017 WL 10350992, at *1 (6th Cir. Mar. 27, 2017) (quoting *Stupak-Thrall*, 226 F.3d at 472-73). Additionally, a motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

## IV.   ANALYSIS

Proposed Intervening Plaintiffs and Plaintiff agree that Section 706(f)(1) of Title VII grants Proposed Intervening Plaintiffs the unconditional statutory right to intervene in this case based on

---

[2] Plaintiff and Proposed Intervening Plaintiffs identify four elements that they assert must be satisfied before intervention as of right will be granted: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." (Docket no. 73 at 15 (citing *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000); docket no. 74 at 2.) However, the three factors other than timeliness are only applicable to an intervention analysis under Rule 24(a)(2), which requires a court to permit anyone to intervene on timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *See Cuyahoga Valley Ry. Co. v. Tracy*, 6 F.3d 389, 395 (6th Cir. 1993) (referring to the last three elements as the "Rule 24(a)(2) factors").

5

the charges that they filed with the EEOC. (Docket no. 68 at 5-6; docket no. 73 at 14-15.) Indeed, under that statute, "[t]he person or persons aggrieved shall have the right to intervene in a civil action brought by the [EEOC] or the Attorney General in a case involving a government, governmental agency, or political subdivision."[3] 42 U.S.C. § 2000e-5(f)(1). Thus, the principal issue is whether the Motion to Intervene was timely filed. Plaintiff argues that all five timeliness factors weigh in favor of denying the Motion, and Proposed Intervening Plaintiffs argue that all five factors weigh in their favor. (Docket no. 73 at 16; docket no. 74 at 3-9.) The Court will address each of the factors in turn below.

### A. The Point to which the Suit has Progressed

Plaintiff contends that unlimited intervention is inappropriate given how close this case is to conclusion. (Docket no. 73 at 16-18.) "If the litigation has 'made extensive progress in the district court before the [proposed intervenors] moved to intervene' then this factor weighs against intervention." *United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Stupak-Thrall*, 226 F.3d at 475). Here, as Plaintiff points out, in the nearly two and a half years that this case had been pending before the Motion to Intervene was filed, the parties engaged in more than two years of active litigation, including what Plaintiff characterizes as a "vigorous" exchange of written discovery, fifteen depositions, submission of Plaintiff's expert report, and nine months of settlement negotiations, which culminated in an agreement in principle to settle the case that was placed on the record on August 17, 2018. At the time the instant Motion was filed, the parties were in the process of drafting a written settlement agreement, which was due to be submitted to

---

[3] Plaintiff indicates in its sur-reply brief that five of the eleven additional individuals represented by Proposed Intervening Plaintiffs' counsel at the time of the reply brief were not charging parties. (Docket no. 84 at 6.) And there are no facts on record that otherwise indicate that the five individuals are "persons aggrieved" under the statute such that they would have an unconditional statutory right to intervene in this case had they joined in the instant Motion.

the court one month later. (*See* docket no. 66.) Proposed Intervening Plaintiffs cannot and do not dispute that the parties have made extensive progress in this case.

Instead, Proposed Intervening Plaintiffs argue that the case has not progressed to a point where intervention would be inappropriate because no formal or final settlement agreement has been reached or approved. (Docket no. 74 at 3-4.) Sixth Circuit precedent undermines the validity of this argument. In *United States v. Tennessee, supra*, the Sixth Circuit held that this first timeliness factor weighed strongly against intervention where, at the time the motion to intervene was filed, the initial settlement had been conditionally approved, all substantive issues had been resolved, and *all that remained was judicial approval of the final settlement*. 260 F.3d at 592-93 (emphasis added). In *United States v. BASF-Inmont Corp.*, the motion to intervene was filed a year after the proposed consent decree was submitted to the district court; seven months after that, the district court denied the motion as untimely and approved the consent decree. 52 F.3d 326 (Table), 1995 WL 234648, at *1 (6th Cir. 1995). The Sixth Circuit held that the district court properly found the first timeliness factor to weigh against intervention because only one step in the litigation remained: the district court's approval of the proposed consent decree. *Id.* at *3. The Sixth Circuit reasoned that motions to intervene filed during a proceeding's final stages are not favorably viewed because "the purpose of the timeliness inquiry is to prevent 'a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *Id.* at *2 (quoting *United States v. South Bend Community Sch. Corp.,* 710 F.2d 394, 396 (7th Cir. 1983)). *See also S.H. v. Stickrath*, 251 F.R.D. 293, 298-99 (S.D. Ohio 2008) (first timeliness factor militated against intervention where motion to intervene was filed three and a half years after the complaint was filed, three years into settlement negotiations, three months after the close of discovery, two months after the parties

7

began drafting the settlement agreement, and two weeks before the settlement agreement was finalized and approved).

In this case, after nine months of settlement negotiations, the parties reached an agreement in principle to settle and recorded that agreement on August 17, 2018. On October 9, 2018, the parties stipulated to hold all deadlines in abeyance so that they could continue working on drafting a full settlement agreement, which was due to be submitted to the court by January 7, 2019.[4] Like the cases discussed above, this case "was approaching the terminus thanks to a settlement that was the culmination of years of fact-finding and painstaking negotiations" when Proposed Intervening Plaintiffs filed their Motion to Intervene. *See Stickrath*, 251 F.R.D. at 298-99. All that remained was the submission and approval of the final settlement agreement. The extensive progress made by the parties combined with the fact that the case is on the "cusp of resolution" weighs against intervention. *See id.* at 299.[5]

### B. The Purpose for which Intervention is Sought

Plaintiff correctly points out that Proposed Intervening Plaintiffs failed to comply with Rule 24(c) by submitting with the instant Motion a pleading that sets out the claim or defense for which intervention is sought. (Docket no. 73 at 12.) As a result, Plaintiff argues, it is not entirely clear what role Proposed Intervening Plaintiffs seek to play in this case. (*Id.*) The Sixth Circuit takes a lenient approach to the procedural requirements of Rule 24(c), *League of Women Voters of*

---

[4] This case was stayed from December 28, 2018, to February 5, 2019, due to the federal government shutdown that occurred between December 22, 2018, and January 25, 2019. (*See* docket nos. 77, 80, 85.) The parties resumed work on the details of the agreement in principle shortly thereafter. (*See* docket no. 85.)

[5] Proposed Intervening Plaintiffs also argue under this factor that "the mere fact that a proposed settlement may be impending is irrelevant because the Proposed Intervenors were unaware that any settlement negotiation was taking place." (Docket no. 74 at 4.) Proposed Intervening Plaintiffs' argument is unavailing. Proposed Intervening Plaintiffs' awareness of the parties' settlement negotiations or the settlement agreement in principle is irrelevant to an analysis of this factor regarding the progression of the case, as their awareness of the settlement does not change the fact that this case has progressed to the point that a settlement agreement in principle has been reached.

*Michigan v. Johnson,* 902 F.3d 572, 580 (6th Cir. 2018) (quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005)), and has excused a prospective intervenor's failure to submit the required pleading when the motion to intervene sets out the claim or defense for which intervention is sought and neither party has claimed that any prejudice would result from granting the motion despite the absence of the pleading. *Providence*, 425 F.3d at 314.

In the instant Motion, Proposed Intervening Plaintiffs "demand a right to participate in the settlement and litigation process and determine their own fate in this litigation." (Docket no. 68 at 5.) They assert that they have a different interest in this lawsuit than that of the EEOC and that they will seek different, victim-specific relief for the employment discrimination that they allegedly suffered at the hands of Defendants. (*Id.* at 1, 5.) For example, they may seek financial redress or a transfer to another facility that is not based on sex. (*Id.* at 5.)

Plaintiff acknowledges that courts have found that intervention is justified under the second timeliness factor when charging parties seek to protect their individual rights against the EEOC or the United States. (Docket no. 73 at 19 (citing *EEOC v. SFI of Tenn.*, No. 14-02740, 2016 WL 8312159, at *2 (W.D. Tenn. Mar. 9, 2016); *EEOC v. Spitzer Mgmt., Inc.*, Nos. 1:06-CV-02337, 1:08-CV-01326, 1:08-CV-01542, 2009 WL 10690282, at *2 (N.D. Ohio Feb. 24, 2009)).) But, Plaintiff argues, it is not clear whether there is any conflict of interests between Plaintiff and Proposed Intervening Plaintiffs in this case because the parties' agreement in principle to settle includes significant individual relief in the form of monetary awards and priority transfers. (*Id.*)

Proposed Intervening Plaintiffs reply that their interests are not adequately represented by the agreement in principle. (Docket no. 74 at 4-5.) Under the terms of the agreement, Defendant MDOC agrees, among other things, to deposit $750,000 into a settlement fund that will be distributed to eligible female corrections officers who worked at WHV from 2009 to the present.

9

(Docket no. 72 at 3; docket no. 73 at 10.) Plaintiff estimates that there are nearly 750 correctional officers who have worked at WHV since 2009. (Docket no. 73 at 24.) Proposed Intervening Plaintiffs assert that where the $750,000 will be split among 750 aggrieved women, "it strains credulity to label this as 'significant individual relief,' as Plaintiff has." (Docket no. 74 at 4-5.) They further assert that because they suffered for years, it is reasonable to estimate that each of their cases has a value grossly in excess of $1,000, and the agreement in principle is therefore inadequate. (*Id*. at 5.)

Plaintiff is correct that the Motion to Intervene and the reply brief do not make clear the extent of the role that Proposed Intervening Plaintiffs seek to play in this case. The Court will address this issue below in its analysis of the fourth timeliness factor. However, it is clear from the Motion that Proposed Intervening Plaintiffs' purpose in intervening is to vindicate their individual rights related to their claims of employment discrimination. This is enough to excuse their procedural failure to comply with Rule 24(c). Proposed Intervening Plaintiffs have also sufficiently demonstrated that their individual rights may not be adequately represented by the parties' agreement in principle. Accordingly, this factor weighs in favor of intervention.

### C. The Length of Time Preceding the Application during which the Proposed Intervenors Knew or Should Have Known of their Interest in the Case

Plaintiff asserts that this factor weighs against granting the Motion to Intervene because Proposed Intervening Plaintiffs have known or should have known that their interests may be affected by this case since its inception and have known of their interests in the terms of the proposed settlement since August 2018. (Docket no. 73 at 20-23.) Plaintiff argues that Proposed Intervening Plaintiffs cannot claim that they were unaware of the lawsuit, that they only recently learned of the settlement, or that Plaintiff and the DOJ did not represent them individually, given the numerous communications made by Plaintiff and the DOJ to the charging parties since the

lawsuit began. (*Id*.) Plaintiff has submitted with its Response to the instant Motion the unsworn declarations made pursuant to 28 U.S.C. § 1746 of Cecily Crawford, a DOJ paralegal who serves as a point of contact with the charging parties who filed the underlying EEOC complaints, and documentary evidence of the DOJ's communications with the charging parties. (Docket nos. 73-1, 84-1.) The following of those communications are particularly relevant to this factor:

- On March 4, 2016, March 7, 2016, and March 9, 2016, DOJ representatives contacted each of the Proposed Intervening Plaintiffs by telephone to notify them of the impending lawsuit and their preservation obligations. Ms. Crawford declares that during these telephone calls, DOJ representatives inquired as to whether each of the Proposed Intervening Plaintiffs had retained her own counsel, notified those without counsel that they would soon be receiving a letter regarding a litigation hold, informed them that the DOJ is not their lawyer and does not represent them personally in any case to be filed, and provided them with contact information should they have any questions. (Docket no. 73-1 ¶¶ 7, 9.)

- On March 25, 2016, Plaintiff sent the aforementioned letter to Proposed Intervening Plaintiffs to notify them of the impending lawsuit and their preservation obligations. (Docket no. 73-1 ¶ 8; docket no. 73-3.)

- On June 22, 2016, Plaintiff sent a letter to all of the charging parties, including Proposed Intervening Plaintiffs, which informed them of the filed lawsuit and enclosed a copy of the Complaint. This letter explicitly stated:

    > We wish to inform you that under Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f), you have the right to intervene in this action, if you choose to do so. We also wish to inform you that the Department of Justice represents the interests of the United States in this case and does not represent you individually. However, whether or not you chose to intervene, the United States will pursue this case in a manner it deems appropriate.

    The letter also invited the charging parties to contact DOJ senior counsel if they had any questions. (Docket no. 73-1 ¶¶ 10-11; docket no. 73-4.)

- Ms. Crawford asserts that the DOJ received questions from the charging parties following the filing of the lawsuit, in response to which DOJ representatives utilized a script that included the following language: "DOJ is not your lawyer and does not represent you. Your decision to hire a lawyer to represent you with respect to this lawsuit is your personal choice. You can of course hire a lawyer, but it is not required. I cannot make a recommendation as to whether you should retain an attorney for yourself." (Docket no. 73-1 ¶ 12; docket no. 84-1 ¶ 18.)

11

- On August 23, 2018, August 24, 2018, and August 25, 2018, Ms. Crawford spoke with Ms. Joyce, Ms. Socier, and Ms. Thomas, respectively, and notified them of the agreement in principle to settle the case and that it includes $750,000 in compensatory damages and other provisions regarding changes to be made at WHV. Ms. Crawford further advised that the parties were working on the details of the settlement and that the DOJ would be in touch by mail and email once the details were finalized. Ms. Crawford also called and left a voicemail for Ms. Morton on August 24, 2018, regarding the same, but Ms. Morton did not return Ms. Crawford's call. (Docket no. 73-1 ¶ 18.)

Proposed Intervening Plaintiffs assert that they were "wholly unaware" that their interests were different than the DOJ's until they sought independent counsel in December 2018, and the Motion to Intervene was filed that same day. (Docket no. 74 at 5-7.) They admit that Plaintiff informed them on several occasions that the DOJ "represents the interests of the United States in this case and does not represent [Proposed Intervening Plaintiffs] individually." But they assert that the DOJ's message in this regard was not clear. They explain that as non-lawyers, who often do not grasp the implications of statutory or legal language, they reasonably interpreted the DOJ's message to mean that the DOJ represented their interests as a class. Proposed Intervening Plaintiffs also contend that they were unaware of the ways in which their interests diverged from those of the United States and that they mistakenly believed that the DOJ was representing their interests as well. Proposed Intervening Plaintiffs claim that they relied on the DOJ to their detriment, who never advised them to retain independent counsel.[6] Proposed Intervening Plaintiffs claim that had they known that the DOJ only represented the interests of the United States, which diverged

---

[6] Proposed Intervening Plaintiffs suggest that the DOJ's failure to advise them to seek independent counsel might constitute a violation of the ethics rules, *e.g.*, Michigan Rule of Professional Conduct (MRPC) 1.8. (Docket no. 74 at 6-7.) This is a bold and unsupported accusation that is without merit. As Plaintiff points out, Proposed Intervening Plaintiffs do not explain why they believe that MRPC 1.8 required the DOJ to advise them to retain independent counsel, and Plaintiff argues that the relevance of the rule to the issue is not readily apparent. (Docket no. 84 at 2.) Indeed, MRPC 1.8 relates to conflicts of interest and prohibited transactions between lawyer and client and does not address the current issue. Plaintiff further points out that the comment to MRPC 4.3 provides that "[d]uring the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel," which, according to a Michigan court, "does not impose an affirmative duty on a lawyer to advise an unrepresented person to consult an attorney." (Docket no. 84 at 2-3 n.1 (quoting *Suck v. Sullivan*, No. 207488, 1999 WL 33437564, at *2 n.4 (Mich. Ct. App. Aug. 27, 1999)).)

sharply from their own, they would have sought independent counsel long ago.  They conclude by arguing that "[T]he critical fact…is that…the motion to intervene was made as soon as it became clear *to the respondent* that the interests of [the respondent] would no longer be protected by [the other party]."  (Docket no. 74 at 7 (quoting *Clarke v. Baptist Mem'l Healthcare Corp.*, 641 Fed. Appx. 520, 523 (6th Cir. 2016) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977))).)[7]

A prospective intervenor "that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene."  *United States v. Tennessee*, 260 F.3d 587, 594 (6th Cir. 2001) (citing *NAACP v. New York,* 413 U.S. 345, 367 (1973); *Cuyahoga Valley Ry. Co. v. Tracy,* 6 F.3d 389, 396 (6th Cir. 1993); *Stotts v. Memphis Fire Dep't,* 679 F.2d 579, 584 & n.3 (6th Cir. 1982) (applicants "should have attempted to intervene when they first became aware of the action, rather than adopting a 'wait-and-see' approach")).

Proposed Intervening Plaintiffs do not dispute that they were aware at this lawsuit's inception that it would implicate their interests, they dispute the timing of when they became aware that their interests would be impaired by the outcome of the lawsuit, *i.e.*, when they became aware that their interests and those of the United States were not "one and the same" and that the DOJ did not represent their interests.  On June 22, 2016, nine days after filing the Complaint in this matter, the DOJ explicitly informed Proposed Intervening Plaintiffs that the DOJ "represents the interests of the United States in this case and does not represent you individually."  The DOJ further informed Proposed Intervening Plaintiffs that they have a right to intervene in the action

---

[7] The unpublished Sixth Circuit case cited by Proposed Intervening Plaintiffs for their conclusion above, *Clarke v. Baptist Mem'l Healthcare Corp., supra*, is non-binding and inapplicable here, as it narrowly relates to the timeliness of post-judgment motions to intervene for the limited purpose of appealing the denial of a class certification.

under Section 706(f) of Title VII, but "the United States will pursue this case in a manner it deems appropriate" regardless of whether they choose to intervene. Also, a copy of the Complaint was enclosed with the June 22, 2016 communication sent to Proposed Intervening Plaintiffs, which, as Plaintiff points out, repeatedly states that the case was brought on behalf of the twenty-eight charging parties *and similarly situated individuals*. (Docket no. 84 at 4 (citing docket no. 1 ¶¶ 11, 35, 41, 43-45, 51, 55).) The June 22, 2016 communication and the Complaint were sufficient to make Proposed Intervening Plaintiffs aware that their interests may be impaired by the outcome of the litigation and that they were entitled to intervene. *See United States v. Tennessee, supra*. Accordingly, Proposed Intervening Plaintiffs should have moved to intervene shortly after receiving the DOJ's June 22, 2016 communication.

Proposed Intervening Plaintiffs assert that their status as laypersons prevented them from understanding that the interests of the United States were different from theirs and that the DOJ did not represent their interests. Ms. Socier, Ms. Scott, and Ms. Joyce attest in almost identical affidavits that they did not fully grasp how severely their interests diverged from the DOJ's interests until they met with independent counsel in December 2018. (Docket no. 74-1 ¶ 11; docket no. 74-2 ¶ 11; docket no. 74-3 ¶ 11.) Nevertheless, to excuse Proposed Intervening Plaintiffs' failure to file a timely motion to intervene on the basis that they are laypersons and were unrepresented by counsel creates a slippery slope of allowing all laypeople to cry ignorance or misunderstanding of the law at the eleventh hour to the detriment or prejudice of the parties, and it alleviates their inherent responsibility to diligently pursue their own interests. Notably, nothing prevented Proposed Intervening Plaintiffs from contacting the DOJ attorneys to inquire about the meaning and implications of the June 22, 2016 communication or from consulting with

independent counsel within a reasonable time after they received the June 22, 2016 communication.

Even if Proposed Intervening Plaintiffs were reasonably unaware that their interests may be impaired by the outcome of this case based on their purported misunderstanding of the DOJ's June 22, 2016 communication and misguided reliance on the DOJ to represent their interests, Proposed Intervening Plaintiffs admit in their reply brief that they learned that their interests were impaired when they read about the August 17, 2018 agreement in principle in a news article and learned that the monetary award would be split amongst hundreds of other women. (*See* docket no. 74 at 5.) Proposed Intervening Plaintiffs do not indicate which news article they read or when they read it. Plaintiff, however, has produced two news articles regarding the agreement, one that was published by Gongwer, a website regarding Michigan policy and politics, on August 18, 2018, and an article published by the Detroit Free Press on August 31, 2018. (Docket nos. 73-1 ¶¶ 19-21, 73-5, 73-6; docket no. 84 at 5.) Additionally, as noted above, Ms. Crawford notified Ms. Joyce, Ms. Socier, and Ms. Thomas of the settlement agreement in principle on August 23, 2018, August 24, 2018, and August 25, 2018, respectively. This demonstrates that Proposed Intervening Plaintiffs had constructive and/or actual notice of the terms of the settlement agreement in principle and its impact on their individual interests at the end of August, yet they did not seek the advice of independent counsel or move to intervene until the beginning of December.

Proposed Intervening Plaintiffs knew or reasonably should have known of their interests in this case, that their interests may be impaired by the outcome, and that they were entitled to intervene in June 2016, but they did not move to intervene until December 2018, approximately two and a half years later. This factor militates against intervention.

### D. The Prejudice to the Original Parties due to the Proposed Intervenors' Failure to Promptly Intervene after they Knew or Reasonably Should Have Known of their Interest in the Case

Proposed Intervening Plaintiffs assert that the parties would experience no prejudice if intervention is permitted because nearly no time passed between when Proposed Intervening Plaintiffs learned that they had independent, unrepresented interests in this case and when they moved to intervene. (Docket no. 74 at 7-8.) As discussed above, however, Proposed Intervening Plaintiffs reasonably should have known that their individual interests would be implicated and possibly impaired by the outcome of this case in June 2016, two and a half years before they moved to intervene. During this time, the parties engaged in years of extensive discovery and months of settlement negotiations to reach a resolution. Notably, Proposed Intervening Plaintiffs could have participated in all of that had they moved to intervene in June 2016 or shortly thereafter. Instead, Proposed Intervening Plaintiffs moved to intervene in this matter at the eleventh hour, after a prospective settlement had been reached and one month before the final written settlement was due. They seek leave to "participate in the settlement and litigation process," but the extent to which they want to "participate" is vague. Thus, if intervention is permitted, it could require the parties to relitigate this entire matter, from which the resulting prejudice is obvious. Even if Proposed Intervening Plaintiffs seek to only participate in the settlement negotiations, their intervention could require the parties to reexamine issues previously settled by the agreement in principle, and as Plaintiff points out, the intervention has the potential to destroy the agreement. (*See* docket no. 73 at 24.) The delay created by renegotiating the terms of the settlement would not only prejudice the parties but also the corrections officers who stand to benefit from the settlement. *See United States v. BASF-Inmont Corp.*, 819 F. Supp. 601, 607 (E.D. Mich. 1993), *aff'd,* 52 F.3d 326 (6th Cir. 1995). Accordingly, this factor weighs against intervention.

### E. The Existence of Unusual Circumstances Militating Against or in Favor of Intervention

Plaintiff points out that the Sixth Circuit has considered the length of time that a case has been pending and the amount of time spent in settlement negotiations as additional factors to be weighed in determining the timeliness of a motion to intervene. (Docket no. 73 at 26 (citing *Stotts*, 679 F.2d at 585).) As Proposed Intervening Plaintiffs point out, however, the Sixth Circuit later stated that "[t]he absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important of these circumstances." (Docket no. 74 at 8 (citing *Stupak-Thrall*, 226 F.3d at 475).) The *Stupak* court explained that the "more critical factor is what steps occurred along the litigation continuum *during* this period of time." *Stupak-Thrall*, 226 F.3d at 475 (emphasis in original). This "more critical factor" is discussed extensively in section A above and militates against intervention. Despite the lessened importance of the two and a half years that the case had been pending and the nine months of settlement negotiations that had taken place when the instant Motion was filed, those factors still militate against intervention. Neither Proposed Intervening Plaintiffs nor the parties assert the existence of any other unusual circumstances related to the propriety of intervention, and the Court finds none.

### F. Limited Intervention

Rule 24 provides for limited-in-scope intervention, so "courts are not faced with an all-or-nothing choice between grant or denial." *United States v. City of Detroit*, 712 F.3d 925, 931-32 (6th Cir. 2013) (citing Fed. R. Civ. P. 24, advisory committee's note, 1966 amendment ("Intervention of right ... may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.")). As noted above, Plaintiff asserts that it would not oppose intervention for the limited purpose of providing Proposed Intervening Plaintiffs with the right to advocate for maximizing their individual relief awards

within the parameters of the existing agreement in principle. (Docket no. 73 at 26-27.) According to Plaintiff, this would mitigate the timeliness concerns caused by the delayed filing of the Motion to Intervene, preserve Proposed Intervening Plaintiffs' ability to participate with regard to their individual rights, and ensure the efficient conduct of the remaining proceedings. (*Id*. at 27-28.) Defendants assert that if intervention is allowed, it should be for the limited purpose of advocating for the individuals at the Fairness Hearing. (Docket no. 72 at 5.) Proposed Intervening Plaintiffs do not indicate the amount of intervention that they seek, and they did not respond to the parties' suggestions of limited intervention.

The August 17, 2018 settlement agreement in principle, as described by Defendants, contains an individual damage component and provides a structure for any individual to object to the proposed individual relief awards at a Fairness Hearing. (*See* docket no. 72 at 4-5.) Seemingly, the limited intervention that the parties suggest would not provide Proposed Intervening Plaintiffs with any additional rights or abilities than those awarded by the settlement agreement. A grant of the proposed limited intervention would therefore be an exercise in futility. The Court does not find any other form of limited intervention to be appropriate in this matter.

Having found that four of the five timeliness factors militate against intervention and that the limited intervention proposed by the parties would be futile, the Court will deny Proposed Intervening Plaintiffs' Motion to Intervene as untimely.

**IT IS THEREFORE ORDERED** that Proposed Intervening Plaintiffs' Motion to Intervene [68] is **DENIED**.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: March 29, 2019         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: March 29, 2019         s/ Leanne Hosking
                              Case Manager