IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　Civil No. 2:16-cv-12146
　　　　　　　　　　　　　　　　　　)　　Hon. Paul D. Borman
STATE OF MICHIGAN AND　　　　　　 )
MICHIGAN DEPARTMENT　　　　　　　)
OF CORRECTIONS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
_____)

## JOINT MOTION FOR PROVISIONAL ENTRY OF THE SETTLEMENT AGREEMENT AND TO SCHEDULE A FAIRNESS HEARING

The Parties jointly move the Court to (1) provisionally enter the proposed

Settlement Agreement ("Agreement") filed contemporaneously with this Joint

Motion for Provisional Entry of the Settlement Agreement and to Schedule a

Fairness Hearing ("Joint Motion"), and (2) schedule a Fairness Hearing on the

Terms of the Settlement Agreement no less than 100 days from the date of the

Court's order on this Joint Motion, as provided in Paragraph 51 of the Agreement.

The Agreement will resolve all claims in this civil action alleging that

Defendants State of Michigan and Michigan Department of Corrections engaged in

two discriminatory employment practices in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, (1) improper female-only designations of certain assignments at Women's Huron Valley Correctional Facility ("WHV") and (2) transfer practices that prevented female COs from transferring from WHV on terms that were applicable to male COs.  The Fairness Hearing on the Terms of the Settlement Agreement would allow the Court to hear any objections to the terms of the Agreement and to decide whether to enter the Agreement as a final order.

As set forth in the accompanying Memorandum of Law, the Court should provisionally enter the Agreement because its terms are lawful, fair, adequate, reasonable, and consistent with the public interest.  Accordingly, the Parties respectfully request that the Court provisionally enter the Agreement and schedule a Fairness Hearing on the Terms of the Settlement Agreement no less than 100 days from the date of the Court's Order on this Joint Motion.

Date:  February 18, 2021

Respectfully submitted,

PAMELA S. KARLAN
Principal Deputy Assistant Attorney
General
Civil Rights Division

DELORA L. KENNEBREW
Chief, Employment Litigation Section
Civil Rights Division
U.S. Department of Justice

CLARE GELLER (NY Reg. No.
4087037)
*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL (DC Bar
No. 985724)
NADIA E. SAID (DC Bar No.
1016598)
JENNIFER M. SWEDISH (DC Bar
No. 977746)
Senior Trial Attorneys
Employment Litigation Section
Civil Rights Division
U.S. Department of Justice
601 D Street, N.W., PHB 4520
Washington, D.C.  20579
Tel:  202-616-3874
Fax:  202-514-1105
Email: taryn.null@usdoj.gov

SAIMA S. MOHSIN
Acting United States Attorney
Eastern District of Michigan

*/s/ with consent of Susan K. DeClercq*
SUSAN K. DeCLERCQ (P60545)
Assistant United States
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Tel: 313-226-9149
Email: Susan.DeClercq@usdoj.gov

*Counsel for Plaintiff*

*/s/ with consent of Jeanmarie Miller*
JEANMARIE MILLER (P44446)
SCOTT A. MERTENS (P60069)
BRYAN W. BEACH (P69681)
Assistant Attorneys General
Attorneys for Defendants, State of
    Michigan and Michigan
    Department of Corrections
Michigan Department of Attorney
General
Civil Litigation, Employment &
Elections
525 W. Ottawa Street, 5th Floor
P.O. Box 30217
Lansing, Michigan 48909
Tel: 517-335-7659
Fax:  517-335-7640
Email: MillerJ51@michigan.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
v.                                 )          Civil No. 2:16-cv-12146
                                   )          Hon. Paul D. Borman
STATE OF MICHIGAN AND              )
MICHIGAN DEPARTMENT                )
OF CORRECTIONS,                    )
                                   )
            Defendants.            )
                                   )
_____)


## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PROVISIONAL ENTRY OF THE SETTLEMENT AGREEMENT AND TO SCHEDULE A FAIRNESS HEARING

## ISSUE PRESENTED

(1) Should the Court provisionally enter the Settlement Agreement because its terms are lawful, fair, adequate, reasonable, and consistent with the public interest?

   The Parties' Answer:  Yes.

## <u>MOST CONTROLLING AUTHORITY</u>

*Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986).

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND ....................................2

III.   OVERVIEW OF THE SETTLEMENT AGREEMENT ..............................4

    A.   Injunctive Relief ...........................................................................4

    B.   Individual Relief ............................................................................5

    C.   Fairness Hearings and Individual Relief Claims Process ....................6

        1.   Notice of Settlement ...............................................................7

        2.   Fairness Hearing on the Terms of the Settlement Agreement...7

        3.   Notice of Entry of the Settlement Agreement and Individual
            Relief Claims Process ................................................................8

    D.   Continuing Jurisdiction and Duration of the Settlement Agreement....9

IV.    DISCUSSION......................................................................................10

    A.   Standard of Review ........................................................................10

    B.   The Parties' Settlement Agreement Is Fair, Reasonable, Adequate and
        Consistent with the Public Interest.....................................................12

        1.   Plaintiff's likelihood of ultimate success on the merits balanced
            against  the amount and form of relief offered in the settlement.
            ....................................................................................................12

            a.   Plaintiff's likelihood of ultimate success on the merits .12

            b.   Amount and form of relief offered in the settlement......15

        2.   Complexity, expense, and likely duration of the litigation.......18

        3.   Stage of the proceedings and the amount of discovery
            completed ..................................................................................19

        4.   Judgment of experienced trial counsel......................................20

        5.   Nature of the negotiations..........................................................21

        6.   Objections raised by class members .........................................21

        7.   Public interest............................................................................22

V.     CONCLUSION...................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir. 1994) ........................................24

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)............................................23

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990)..........................11

*EEOC v. Mid-American Specialties, Inc.*, 774 F. Supp. 2d 892
  (W.D. Tenn. 2011)................................................................................................16

*Everson v. Mich. Dep't of Corr.*, 391 F.3d 737 (6th Cir. 2004) ................ 12, 13, 22

*Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976) ............................................16

*Howe v. City of Akron*, No. 5:06 CV 2779, 2014 WL 12526624 (N.D. Ohio Mar.
  27, 2014)...............................................................................................................16

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ................. 13, 15, 16

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v.
  Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ..................................... ii, 10, 11

*Jordan v. Dellway Villa of Tenn., Ltd.*, 661 F.2d 588 (6th Cir. 1981) ...................15

*Kasprzycki v. Mich. Dep't of Corr.*, No. 17-cv-11220, 2019 WL 3425259..... 13, 14

*Kelley v. Thomas Solvent Co.*, 790 F. Supp. 731 (W.D. Mich. 1991)....................10

*Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
  478 U.S. 501 (1986) ....................................................................................... ii, 10

*Logan v. MGM Grand Detroit Casino*, 939 F.3d 824 (6th Cir. 2019) ...................10

*Reed v. Rhodes*, 869 F. Supp. 1274 (N.D. Ohio 1994)............................... 11, 20, 22

*United States v. Akzo Coatings of Am.*, 949 F.2d 1409 (6th Cir. 1991) .................21

*United States v. City of Alexandria*, 614 F.2d 1358 (5th Cir. 1980) .....................10

*United States v. City of New York*, 717 F.3d 72 (2d Cir. 2013)...............................14

*United States v. Lexington-Fayette Urban Cty. Gov't*,
  591 F.3d 484 (6th Cir. 2010).......................................................................... 21, 22

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ...................................... *passim*

## Statutes

42 U.S.C. § 2000e ......................................................................................................2

42 U.S.C. § 2000e-2(e)(1)..................................................................................... 3, 13

42 U.S.C. § 2000-5(g)(1)..........................................................................................16

42 U.S.C. § 2000e-2(n)(1)..........................................................................................24

42 U.S.C. §§ 2000-2(a) ...............................................................................................2

## I.      INTRODUCTION

Plaintiff United States of America ("United States") and Defendants State of Michigan and Michigan Department of Corrections ("MDOC") (collectively, the "Parties") submit the following Memorandum of Law in Support of the Joint Motion for Provisional Entry of the Settlement Agreement and to Schedule a Fairness Hearing ("Joint Motion").  The Parties request that the Court provisionally enter the proposed Settlement Agreement ("Agreement") filed with this Joint Motion, and schedule a Fairness Hearing on the Settlement Agreement.[1] *See* Exhibit A – Settlement Agreement.

As set forth below, the Court should provisionally enter the Agreement because its terms are lawful, fair, adequate, reasonable, and consistent with the public interest.  If entered, the Agreement will:

(1)  resolve all legal and factual disputes between the Parties;

(2) provide injunctive relief tailored to the disputes that gave rise to the litigation; and

(3) provide remedies to individual victims of the alleged discrimination.

---

[1] This Memorandum incorporates by reference the definitions set forth in the Settlement Agreement, attached as Exhibit A – Settlement Agreement, at Section II.

1

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The United States commenced this action against Defendants on June 13, 2016, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and filed an amended complaint on July 27, 2016. *See* ECF No. 6.  The amended complaint alleges that Defendants engaged in two discriminatory employment practices, in violation of Sections 703(a), 706, and 707 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-5, 2000e-6:  (1) designation of four Non-Housing CO assignments (Food Service, Yard, Property Room, and Electronic Monitor) at Women's Huron Valley Correctional Facility ("WHV") as "female-only" positions, and (2) transfer practices that prevented female COs from transferring from WHV on terms that were applicable to male COs.  ECF No. 6, PageID.40-44.  The United States' case was based on charges of discrimination against Defendants that were timely filed with the Equal Employment Opportunity Commission ("EEOC") by twenty-eight Charging Parties.  ECF No. 6, PageID.30-32.  In their answer to the United States' amended complaint, Defendants denied the United States' allegations, *see* ECF No. 9, and do not admit to liability under Title VII.

After more than a year of extensive fact discovery, the Parties began productive settlement discussions in November 2017.  These efforts culminated in

a successful mediation on August 17, 2018, facilitated by Magistrate Judge Mona K. Majzoub.[2]

The Parties acknowledge their shared objective of ensuring that WHV is sufficiently staffed such that both inmates and staff members are safe and secure in a manner that does not violate Title VII.  The Parties consent to the terms of the proposed Agreement, filed with this Joint Motion, and agree to waive hearings and findings of fact and conclusions of law on all remaining issues in the case, subject to the fairness hearings outlined below.

In terms of the relevant facts, MDOC designated certain Non-Housing Unit CO assignments at WHV as female-only in 2009.  ECF No. 6, PageID.35-36; ECF No. 9, PageID.55.  MDOC lifted the female-only designations for three of the challenged assignments in 2016, but the female-only designation remains on the Electronic Monitoring assignment.  ECF No. 6, PageID.37; ECF No. 9, PageID.55. Such a female-only designation is permitted by Title VII only if sex is a bona fide occupational qualification ("BFOQ") "reasonably necessary to the normal operation of that particular business or enterprise."  42 U.S.C. § 2000e-2(e)(1).

---

[2] As indicated by the Parties' requests for additional time granted by this Court since the agreement in principle was reached, the Parties have endeavored to iron out difficult staffing considerations to balance complying with Title VII and meeting the employer's legitimate penological objectives.  The Parties' work to resolve these complex issues has been exacerbated by the serious public health concerns brought about by the national emergency occasioned by COVID-19.

Additionally, since at least 2009 to the present, MDOC has imposed a transfer freeze from WHV to other MDOC facilities. ECF No. 6, PageID.38; ECF No. 9, PageID.56. The United States alleges that the freeze applied only to female COs because some exceptions were made for males who wanted to transfer. ECF No. 6, PageID.39.

### III. OVERVIEW OF THE SETTLEMENT AGREEMENT

#### A. Injunctive Relief

The proposed Agreement will enjoin Defendants from violating Title VII by (1) implementing female-only assignments at WHV in the absence of a BFOQ necessitating such an assignment, (2) implementing any transfer freeze that discriminates on the basis of sex, or (3) retaliating against any individuals who participated or cooperated in this litigation. In particular, the Agreement requires that:

- MDOC will develop a system for reviewing female-only job assignments. This system will include a review process that accurately assesses whether female sex is a BFOQ reasonably necessary to the normal operation of WHV. Exhibit A – Settlement Agreement ¶¶ 27-32.

- MDOC will not restrict the transfer of female COs from WHV more than it restricts the transfer of male COs from WHV unless the restriction comports with Title VII. Additionally, MDOC shall lift the transfer freeze at WHV to

4

the extent necessary to provide female COs with the same terms for transferring from WHV as are applied to male COs. *Id.* ¶¶ 33-39.

- MDOC will lift the transfer freeze at WHV and permit female COs to transfer from WHV in accordance with provisions applicable at other MDOC facilities within fourteen days of WHV reaching a Vacancy Rate between 9% and 14% for female COs as specified in the Agreement. *Id.* ¶¶ 35, 37.

- MDOC will implement a written recruitment and retention plan in an effort to avoid restricting transfers by female COs on the basis that WHV has inadequate staff to backfill the positions of female COs who transfer. *Id.* ¶ 40.

- MDOC will also provide mandatory training to all relevant employees on the female-only assignment review process and the requirement that transfer rules for COs be administered on a nondiscriminatory basis. *Id.* ¶ 97.

## B.    Individual Relief

The Settlement Agreement also specifies:

- Defendants will provide monetary relief in the amount of $750,000 to female COs who were harmed by the transfer freeze at any time between 2009 and the entry of this Agreement as well as to EEOC Charging Parties for service in the litigation of this case. Exhibit A – Settlement Agreement ¶

5

21.  EEOC Charging Parties may be offered service awards of either $5,000 or $10,000 based on their assistance in bringing this case, in addition to any monetary relief to which they are otherwise entitled on account of harm attributable to the transfer freeze.  *Id.* ¶ 22.  The remainder of the relief will be distributed among all Claimants entitled to monetary relief, taking into account the duration of time each Claimant worked at WHV, was eligible to transfer, and was harmed by the inability to transfer.  *Id.* ¶ 72.

■  MDOC will make fifteen priority transfers of Claimants who still work as COs at WHV, as detailed in the Agreement.  *Id.* ¶¶ 45, 88.  If there are more than fifteen Claimants eligible for Priority Transfer who are seeking Priority Transfers to facilities with slots available for transfer, the Claimants shall receive Priority Transfer offers in the order of:  Charging Parties, in order of number of continuous service hours from highest to lowest, followed by non-Charging Parties, in order of number of continuous service hours from highest to lowest.  *Id.* ¶ 88.

## C.  Fairness Hearings and Individual Relief Claims Process

The Parties respectfully request that the Court provisionally enter the proposed Settlement Agreement and schedule a Fairness Hearing on the Terms of the Settlement Agreement no less than 100 days from the date of the Court's order on this Joint Motion.  The Agreement, if provisionally approved, sets forth the

6

schedule for notice and two fairness hearings, the Fairness Hearing on the Terms of the Settlement Agreement and the Fairness Hearing on Individual Awards.

### 1.   Notice of Settlement

Following provisional approval of the Agreement, notice will be sent to every female individual who has worked as a CO at WHV since 2009.  Exhibit A – Settlement Agreement ¶ 53.  The notice will include information on how to file objections to the Agreement with the Court prior to the Fairness Hearing on the Terms of the Settlement Agreement.  The notice to these women will also include instructions on how to file a claim for a monetary award or priority transfer consideration and the Interest-in-Relief Form.  *Id.*  The Charging Parties will receive the same notice and Interest-in-Relief Form along with a Cover Letter to Charging Parties and a Notice of Service Award.  *Id.*(a).  Notice of the Agreement will also be provided to all interested third parties, consisting of COs currently employed at MDOC and the Michigan Corrections Organization, the union representing MDOC COs.  *Id.*  This notice has instructions on how to file objections with the Court prior to the Fairness Hearing on the Terms of the Settlement Agreement.  *Id.*

### 2.   Fairness Hearing on the Terms of the Settlement Agreement

As set forth in the Agreement, the Court will consider and resolve any objections to the terms of the Agreement at the hearing.  If the Court concludes

that the terms of the Agreement are lawful, fair, reasonable, and adequate, the

Court shall enter the Settlement Agreement at or following the fairness hearing.

Exhibit A – Settlement Agreement ¶¶ 50-57.

### 3.   Notice of Entry of the Settlement Agreement and Individual Relief Claims Process

Following the entry of the Settlement Agreement, all Charging Parties and

Claimants will receive a copy of the notice of entry of the Agreement to inform

them of the Court's decision.  Exhibit A – Settlement Agreement ¶ 58.  The

United States, in consultation with Defendants, will prepare a list identifying the

Charging Parties and Claimants who are eligible for individual relief, as well as

the Charging Parties who are entitled to service awards.  *Id.* ¶¶ 59-60.  The United

States will file the Proposed Individual Awards Lists with the Court and

simultaneously move the Court to hold a Fairness Hearing on Individual Awards

to review the initial individual award determinations as well as any objections to

those initial determinations.  *Id.* ¶¶ 61-64.  Each Charging Party, and each

Claimant, will be notified of the proposed monetary award that she will receive

and whether she is eligible for priority transfer, if she so requests.  *Id.* ¶ 64.  After

notice is given, Charging Parties and individuals who submitted Interest-in-Relief

forms will have the opportunity to object to the United States' determinations of

their eligibility for relief and their proposed individual awards, if any, and may

request to be heard at the second fairness hearing.  *Id.* ¶¶ 64-65.

### 4.   Fairness Hearing on Individual Awards

At the Fairness Hearing on Individual Awards, the Court will consider and resolve any objections filed by Charging Parties and individuals who submitted Interest-in-Relief forms.  Exhibit A – Settlement Agreement ¶ 67.  If the Court determines that the proposed monetary and priority transfer awards are lawful, fair, reasonable, and adequate, the Court will approve the Proposed Individual Awards Lists at or following the Fairness Hearing on Individual Relief.  *Id.*  Following the Court's approval, notice will be sent to Charging Parties and Claimants who are eligible for individual awards.  *Id.* ¶ 73.

### D.   Continuing Jurisdiction and Duration of the Settlement Agreement

Per the terms of the Agreement, unless a party obtains an extension, the Agreement will expire, and the case will be dismissed without further order of the Court, when three years have passed after the Agreement is entered.  The Court may extend the Agreement if Defendants have not completed the priority transfers, issued the monetary payment checks, or established the female-only assignment review process within the three-year duration.  Exhibit A – Settlement Agreement ¶ 98.

## IV.   DISCUSSION

### A.   Standard of Review

It is well-established that voluntary compliance and affirmative change are the preferred means of achieving Title VII's objectives.  *Local 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 515-16 (1986). As the Sixth Circuit noted, "in crafting Title VII, Congress chose 'cooperation and voluntary compliance … as the preferred means' for eradicating workplace discrimination."  *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 828 (6th Cir. 2019).  Consistent with that principle, there is a presumption of validity when federal and state "governmental agencies … worked toward and approve of the consent decree.  *Kelley v. Thomas Solvent Co.*, 790 F. Supp. 731, 735 (W.D. Mich. 1991).  In terms of this expectation of lawfulness, "settlement agreements negotiated by an agency of the federal government in an employment discrimination suit carry 'the presumption of validity that is overcome only if the decree contains provisions which are unreasonable, illegal, unconstitutional, or against public policy.'"  *United States v. Par. of Orleans Crim. Sheriff*, No. 90-4930, 1997 U.S. Dist. LEXIS 872, at *14-15 (E.D. La. Jan. 24, 1997) (*quoting United States v. City of Alexandria*, 614 F.2d 1358, 1362 (5th Cir. 1980)).

A district court may not approve a settlement until it determines, after a hearing, that "the settlement is fair, reasonable and adequate."  *Int'l Union, United*

*Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497

F.3d 615, 631 (6th Cir. 2007).  Seven factors guide the district court's inquiry into

the lawfulness, fairness, and adequacy of a proposed settlement:

> (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by class members; and (7) the public interest.

*Reed v. Rhodes*, 869 F. Supp. 1274, 1279 (N.D. Ohio 1994) (citing *Williams v.*

*Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)) (other citations omitted); *see also*

*Int'l Union*, 497 F.3d at 631.

The Sixth Circuit has been clear that the scope of the court's review of the

settlement under these factors is not to "decide the merits of the case or resolve

unsettled legal questions," but to ensure that the disputes are real and that the

settlement fairly and reasonably resolves the parties' differences.  *Int'l Union*, 497

F.3d at 631, 636-37.  The district court's approval of a settlement agreement will

not be disturbed on appeal absent an abuse of discretion.  *Bailey v. Great Lakes*

*Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990).

11

**B.    The Parties' Settlement Agreement Is Fair, Reasonable, Adequate and Consistent with the Public Interest.**

The Agreement proffered by the Parties satisfies the factors that this Court evaluates to determine its fairness, reasonableness, adequacy, and consistency with the public interest.

**1.    Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement.**

Weighing Plaintiff's likelihood of success against the relief provided by the Agreement helps to establish that this settlement is fair, reasonable, adequate, and consistent with the public interest.

**a.    Plaintiff's likelihood of ultimate success on the merits**

The strength of the United States' claims in this case bolsters the fairness of this settlement.  Here, the United States challenged two employment practices as violations of Title VII:  (1) the designation of four Non-Housing CO assignments (Food Service, Yard, Property Room, and Electronic Monitor) at WHV as "female-only" positions, and (2) transfer practices that prevented female COs from transferring out of WHV on terms that were applicable to male COs.  *See generally* ECF No. 6, PageID.35-40.  A facially discriminatory policy such as female-only designations requires Defendants to not only raise a BFOQ defense, but to actually prove that defense, which the Sixth Circuit has acknowledged to be a difficult hurdle.  *See Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004).

12

The Sixth Circuit specified, "The BFOQ defense is written narrowly, and is to be read narrowly.  Moreover, the burden is on an employer to establish a BFOQ defense."  *Id.* (citations omitted).  If Defendants cannot prove that being female is a BFOQ for the positions that the United States challenges, then they are liable for violating Title VII.  42 U.S.C. § 2000e-2(e)(1) (a sex qualification must be "reasonably necessary to the normal operation of that particular business or enterprise" to justify a facially discriminatory practice).  Moreover, "an employer['s] fail[ure] to rebut . . . the Government's prima facie case . . . justifies an award of prospective relief," so Defendants' failure to establish a BFOQ would warrant injunctive relief.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977).

A recent case, in which this Court made clear that "[a] facially discriminatory employment policy … is direct evidence of discriminatory intent," *Kasprzycki v. Mich. Dep't of Corr.*, No. 17-cv-11220, 2019 WL 3425259, at *10, 2019 U.S. Dist. LEXIS 126532 (E.D. Mich. July 30, 2019), provides valuable insight into the strength of the United States' claims.  In *Kasprzycki*, the plaintiff challenged the same female-only CO positions and discriminatory transfer policy at WHV that the United States challenged in this lawsuit, and which the Parties now seek to settle.  In an opinion denying summary judgment, the Court determined that "WHV's staffing policy … is facially discriminatory, as it requires

13

certain positions at WHV to be staffed by women" and observed "substantial evidence showing the connection between the BFOQ policy and the inability to transfer." *Id.* This opinion weighs heavily in favor of the United States' likelihood of success on the merits of its complaint which challenges the same non-housing, female-only CO positions as facially discriminatory based on sex in violation of Title VII. Given the precedent in *Kasprzycki* that the WHV female-only CO positions challenged in this case are facially discriminatory, only an affirmative defense such as a BFOQ can justify such facial discrimination. That standard of proof is high and requires satisfaction of various specific factors set out in *Everson*.

As for the transfer freeze, the United States was prepared to show, through deposition testimony from MDOC employees, the testimony of female COs who work at WHV, transfer records, and correspondence, that MDOC's practice of barring only female COs from transferring constitutes an improper sex-based pattern or practice of disparate treatment because the "discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice,' and the discrimination was directed at a class of victims." *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (citations omitted) (alteration in original); *see* ECF No. 6, PageID.44. Additionally, under *Teamsters*, once the United States succeeds during the liability phase of establishing a pattern or practice of discrimination, those female COs, including the Charging Parties, who

14

worked at WHV are entitled to a presumption that they were affected by the discrimination and need only prove the extent of their damages, subject to Defendants' rebuttal.[3] *See Teamsters*, 431 U.S. at 361-62; *see also Jordan v. Dellway Villa of Tenn., Ltd.*, 661 F.2d 588, 592-95 (6th Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982) (discussing the propriety of using the *Teamsters* model for compensatory damages).

> **b.**    **Amount and form of relief offered in the settlement**

The strength of the United States' claims notwithstanding, the risks of continued litigation weigh in favor of approving this Agreement. If this case had gone to trial, the United States would have sought compensatory damages for emotional injuries which, if awarded, could be higher or lower than the specific monetary relief that the Agreement provides. Given this uncertainty, the Parties believe the amount of monetary damages provided by the Agreement constitutes a fair compromise, which comes after settlement discussions facilitated by three mediations with a magistrate judge and motivated by a year of fact discovery. That discovery included twenty-seven depositions, the production of thousands of pages of documents, and the disclosure of the United States' expert report on liability.

---

[3] Compensatory damages amounts may be subject to determination by a jury, as requested by the United States in its Amended Complaint. Thus, settlement of this case also reduces the uncertainty that a jury's determination of these damages could present.

The significant injunctive relief provided for in the Agreement is another important factor that favors approving the Agreement.  Title VII gives courts broad equitable discretion to fashion injunctive remedies for discrimination violations. *See* 42 U.S.C. § 2000-5(g)(1).  As such, the Supreme Court has held that, under Title VII, "federal courts are empowered to fashion such relief as the particular circumstances of a case may require."  *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 (1976).  Appropriate prospective injunctive relief may include an "order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order 'necessary to ensure the full enjoyment of the rights' protected by Title VII."  *See Teamsters*, 431 U.S. at 361 (footnote omitted); *see also EEOC v. Mid-American Specialties, Inc.*, 774 F. Supp. 2d 892, 896-98 (W.D. Tenn. 2011); *Howe v. City of Akron*, No. 5:06 CV 2779, 2014 WL 12526624, at *4 (N.D. Ohio Mar. 27, 2014).

The injunctive relief required by this Agreement is highly likely to remedy the violations alleged in the complaint that gave rise to this litigation.  As a prime example, the Agreement requires MDOC to develop a system for reviewing female-only job assignments before it submits them to the Michigan Civil Service Commission.  Should MDOC's proposed review process prove inadequate to address the violations of Title VII that stemmed from the amended complaint, the

16

United States may object to that process.  This review process will allow the Parties to ensure that female-only job restrictions comply with Title VII.  In terms of the United States' transfer claim, once the WHV Vacancy Rate for the relevant group of female COs reaches the agreed-upon rate between 9% and 14%, WHV will lift the transfer freeze.  Further, MDOC's recruitment and retention efforts will help ensure that WHV has adequate staffing to prevent reinstatement of the transfer freeze.  The Agreement's training provision will serve as a resource to MDOC's employees who have responsibility over female-only designations and will aid employees who are responsible for administering the transfer rules in a nondiscriminatory fashion.

In sum, the Parties, recognizing the risks inherent in litigation, have chosen to resolve the case instead, and the balance of the strengths of the United States' case against the inherent risks of litigation weighs in favor of approving the Agreement.  As the Sixth Circuit has noted:  "A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case.  A decree is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed."  *Williams*, 720 F.2d at 922.  This Court should therefore find the proposed Agreement to be a fair compromise, which tailors the relief to address the employment practices challenged in the amended complaint.

## 2.    Complexity, expense, and likely duration of the litigation

A pattern or practice case such as this one is involved and complex, as the discovery orders and litigation to date have shown.  In recognition of the complexity of this litigation, by order of this Court, the case was bifurcated into liability and damages phases.  As a further indication of the efforts expended by the parties to manage this complex case, the liability phase of these proceedings was further separated first into the litigation of the pattern-or-practice claims and then the individual discrimination claims.  Stip. & Order Regarding Bifurcation of Disc. & Trial, ECF No. 13.  Additionally, the discovery order for liability allowed for extensive fact and expert discovery.  Civ. Case Mgmt. & Scheduling Order, ECF No. 14.

At the time that the case settled in principle, the United States had already taken twenty-seven depositions, a number of which were part of the 30(b)(6) deposition of MDOC, submitted its initial expert report, and requested and obtained thousands of pages of documents in written discovery.  Fact discovery, however, had not yet closed, and Defendants had recently served Requests for Production and Interrogatories on the United States.  Additionally, Defendants had not yet taken any fact or expert depositions, but they had requested the availability of the twenty-eight Charging Parties for depositions.  As such, there was a great deal of fact discovery still to be conducted as well as extensive and expensive

expert discovery, including the production of the Defendants' expert report, the

United States' rebuttal expert report, and expert depositions.  There was extensive

motions practice anticipated, involving both expert and dispositive motions, in the

pattern-or-practice liability phase alone.  The pattern-or-practice liability trial

would have been lengthy, with expert testimony from both sides.  Regardless of the

outcome of that trial, there would then have been additional proceedings because

of the individual disparate treatment claims that were awaiting adjudication.  If the

United States prevailed, an extensive remedial relief phase, consisting of discovery

and trial on each individual female CO's entitlement to and scope of relief, would

have followed.  Stip. & Order Regarding Bifurcation of Disc. & Trial, ECF No. 13,

PageID.107-108.  If the United States did not prevail on the pattern-or-practice

claims, discovery and trial on the individual discrimination claims would begin and

consist of fact and expert depositions and written discovery.  *Id.*  Simply put, the

Parties were looking ahead to complex, expensive, and lengthy litigation had the

case not settled.

### 3.    Stage of the proceedings and the amount of discovery completed

As discussed in the section above, at the time that a settlement was

reached, a great deal of discovery had been completed, but there was still far more

ahead.  Indeed, when the parties agreed in principle to settle, the litigation had

already been ongoing for over three years.  In addition to the thousands of pages of

19

documents exchanged in written discovery, the United States had taken a comprehensive 30(b)(6) deposition of MDOC that involved twenty-eight topics and thirteen different 30(b)(6) deponents.  There were also fourteen fact depositions taken of MDOC officials and employees, including the former Director of MDOC and three different wardens of WHV.  The United States disclosed its expert report and Defendants had identified their expert.  At the point that the case settled, a great deal of key facts had been disclosed, so the Parties were in a strong position to weigh the evidence and make a reasoned decision about settlement.

### 4.    Judgment of experienced trial counsel

Both Parties are represented by experienced counsel who negotiated this Agreement after hard-fought litigation and with full knowledge of the risks of litigation.  Both Parties' counsel believe that this Agreement is the best outcome for their clients.  "The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.  Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."  *Williams*, 720 F.2d at 922-23.  Given the breadth and significant nature of the discovery, the initial expert report, and experience of counsel, this factor weighs heavily in favor of approving the Agreement.  *See Reed*, 869 F. Supp. at 1281.

### 5.     Nature of the negotiations

The United States and Defendants negotiated the settlement at arms' length over many months, including three mediation sessions before a federal magistrate judge.  The Parties' good faith is supported by the facts that counsel for both sides are public servants acting in the public interest, and certainly "further evidenced by [a] 'manifested willingness … to thoroughly consider all oral and written comments made with regard to the proposed decree'" by interested parties at the Fairness Hearing on the Terms of the Settlement Agreement.  *United States v. Lexington-Fayette Urban Cty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010) (quoting *United States v. Akzo Coatings of Am.*, 949 F.2d 1409, 1435 (6th Cir. 1991)).

### 6.     Objections raised by class members

At this point, no one has had the opportunity to object, but the Agreement provides a process that will allow Charging Parties and Claimants to object, both to the Agreement itself and then to their proposed individual awards, after they are notified of them.[4]  Exhibit A – Settlement Agreement ¶¶ 55, 65.  Thus, the women on whose behalf the United States pursued its case will have a chance to weigh in

---

[4] Several Charging Parties moved to intervene in the case in December 2018.  *See* Proposed Intervening Pls.' Mot. to Intervene, ECF No. 68.  In denying intervention, the Court noted that the settlement agreement in principle "contains an individual damage component and provides a structure for any individual to object to the proposed individual relief awards at a Fairness Hearing."  Op. & Order Denying Proposed Intervening Pls.' Mot to Intervene, ECF No. 87, PageID.2184.

on the Agreement and their awards, and two fairness hearings will be held to fully consider those objections.

Also, as one court noted:  "A court should not withhold approval merely because some class members object to the agreement.  In considering the extent of opposition, the Court also must view the agreement in its entirety, rather than isolating individual components of the agreement for analysis."  *Reed*, 869 F. Supp. at 1281-82 (citations omitted).  Viewed in its entirety, this Agreement works to ensure that female COs at WHV are treated fairly and in compliance with Title VII, and compensates them for harm that they have experienced as a result of the discriminatory transfer freeze.

### 7.  Public interest

The proposed Agreement is consistent with the public interest.  "In evaluating the public interest, the district court must consider whether the decree is 'consistent with the public objectives sought to be attained by Congress.'" *Lexington-Fayette Urban Cty. Gov't*, 591 F.3d at 490 (quoting *Williams*, 720 F.2d at 923).  Courts have long recognized the importance of enforcing Title VII and equality of opportunity in employment.  Since Title VII prohibits sex discrimination except when sex is a required BFOQ for an employment position, courts must scrutinize facially discriminatory policies closely, and defendants must amply justify any sex-specific job assignment.  *Cf. Everson*, 391 F.3d at 748-49.

22

Through the injunctive relief provisions in this Agreement, the Parties demonstrate their shared interest in examining MDOC's needs for sex-specific job assignments at WHV and assuring that male and female COs have equal opportunities unless a strong factual basis establishes that sex-specific job assignments are appropriate, as agreed by the Parties or as ordered by the Court upon its review.  Additionally, the priority transfer relief and the lift of the transfer freeze, once WHV reaches the agreed-upon Vacancy Rate between 9% and 14% for the relevant female COs, will ameliorate the situation in which female COs have been unable to transfer out of WHV.  The recruitment and retention provisions aim to increase the number of female COs at WHV so that there is no need for a future transfer freeze.

In addition, one of the central purposes of Title VII is to make whole the persons harmed by unlawful employment practices.  *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (noting that Title VII provides courts "with full equitable powers" to "secur[e] complete justice" (citation omitted)).  Here, the Agreement allocates monetary relief according to the amount of time that each CO worked at WHV, was eligible to transfer, and was harmed by the inability to transfer.  Additionally, the Agreement provides for fifteen priority transfers to allow a select group of Claimants to transfer out of WHV.  The individual remedial relief provided is appropriate in light of courts' broad power to grant relief to individuals harmed by employment practices that violate Title VII.  *Id.*

23

Also, the Settlement Agreement provides for two public hearings to ensure the fairness of the Agreement, protect third parties' rights, and safeguard the Agreement from collateral attack.  The first fairness hearing, held prior to approval of the Agreement, gives affected third parties the opportunity to voice any objections to the terms of the Agreement and allows this Court the opportunity to satisfy itself that the terms of the Settlement Agreement are lawful, fair, reasonable, adequate, and otherwise consistent with the public interest.  Exhibit A – Settlement Agreement ¶ 52.  This comports with the provisions of Title VII that protect a Title VII settlement agreement or consent decree from collateral attack, while addressing due process concerns of third parties.  *See* 42 U.S.C. § 2000e-2(n)(1); *Aiken v. City of Memphis*, 37 F.3d 1155, 1175-76 (6th Cir. 1994).  The second fairness hearing, held prior to the implementation of the relief, gives this Court the chance to ensure that the awards of individual remedial relief are fair and equitable given the total amount of relief available under the Settlement Agreement.  Exhibit A – Settlement Agreement ¶ 67.  For these reasons, the Agreement is consistent with the public interest.

## V.    CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter the accompanying Agreement.

Date:  February 18, 2021

24

Respectfully submitted,

PAMELA S. KARLAN
Principal Deputy Assistant Attorney
General
Civil Rights Division

DELORA L. KENNEBREW
Chief, Employment Litigation Section
Civil Rights Division
U.S. Department of Justice

CLARE GELLER (NY Reg. No.
4087037)
*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL (DC Bar
No. 985724)
NADIA E. SAID (DC Bar No.
1016598)
JENNIFER M. SWEDISH (DC Bar
No. 977746)
Senior Trial Attorneys
Employment Litigation Section
Civil Rights Division
U.S. Department of Justice
601 D Street, N.W., PHB 4520
Washington, D.C. 20579
Tel: 202-616-3874
Fax: 202-514-1105
Email: taryn.null@usdoj.gov

SAIMA S. MOHSIN
Acting United States Attorney
Eastern District of Michigan

*/s/ with consent of Susan K. DeClercq*
SUSAN K. DeCLERCQ (P60545)
Assistant United States
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Tel: 313-226-9149
Email: Susan.DeClercq@usdoj.gov

*Counsel for Plaintiff*

 */s/ with consent of Jeanmarie Miller*
JEANMARIE MILLER (P44446)
SCOTT A. MERTENS (P60069)
BRYAN W. BEACH (P69681)
Assistant Attorneys General
Attorneys for Defendants, State of
    Michigan and Michigan
    Department of Corrections
Michigan Department of Attorney
General
Civil Litigation, Employment &
Elections
525 W. Ottawa Street, 5th Floor
P.O. Box 30217
Lansing, Michigan 48909
Tel: 517-335-7659
Fax: 517-335-7640
Email: MillerJ51@michigan.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2021, I electronically filed the above

document(s) with the Clerk of the Court using the ECF system, which will provide

electronic copies to counsel of record.

*/s/ Taryn Wilgus Null*
TARYN WILGUS NULL (D.C. Bar No. 985724)
Senior Trial Attorney
Attorney for Plaintiff United States of America
